Commonwealth *v.* Dabney, Appellant.

Argued December 16, 1958. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

reargument refused April 9, 1959.

*David H. Kubert,* with him *Matthew Kramer,* for appellant.

*James McGirr Kelly,* Assistant District Attorney, with him *Juanita Kidd Stout,* Assistant District Attorney, *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY ERVIN, J., March 18, 1959:

The defendant, Maurice B. Dabney, a druggist, was charged in five bills of indictment with the felonious sale of drugs on the following dates: February 28, March 3, March 4, March 10, 1956, and one omnibus bill alleging divers sales from September 29, 1955 to February 27, 1956. He was convicted on all five bills and after disposal of motions for new trial and for arrest of judgment he was sentenced on bill No. 705 (which alleged an illegal sale on March 4, 1956). Sentence was suspended on the other bills. From the judgment of sentence the defendant has appealed.

An addict, Theodore Wood, testified that he purchased morphine from the defendant, without any prescription, at the defendant's drug store several times a week beginning in September 1955 and continuing until the time he was arrested in March 1956. He specifically remembered purchases on March 4 and March 10, 1956. Wood, immediately after leaving the drug store, turned over part of his purchases to police officers who were waiting for him outside the drug store and he retained part of the purchases for his own use.

The police had the purchases analyzed by a chemist, who testified that the morphine was of a strength which could not lawfully be sold without a doctor's prescription. Wood also testified that he used some of the drugs purchased on March 4 and March 10 on himself and that they gave him the effect that morphine normally gave him and he described that effect. On March 13, 1956 the defendant reported to the police that his store had been burglarized on March 11 or 12 and that among the things taken was his narcotics supply. On March 13, 1956 the police went to the drug store and made an investigation. A druggist is required to preserve all written prescriptions for narcotics for two years in order to make them accessible to inspection by the proper authorities: Act of July 11, 1917, P. L. 758, as amended, 35 PS §858. When the officers were making their inspection of the drug store on March 13, 1956 they asked the defendant to show them his narcotic reports to the state and his prescriptions for narcotics. Seven prescriptions were reported to the state but only one could be found. This was a prescription on the blank of Dr. Forrest H. Battis for, inter alia, four grains of "Morphine Sulph. Sulphatis" which originally was dated 9-10-55 but the defendant, in the presence of the police officers, changed the date to 3-10 (or 15)-56. The officer also testified that the number which had been on the prescription was "scraped" out by the defendant in his presence. The Battis prescription was marked Commonwealth's Exhibit No. 3. Counsel for the defendant objected to the entire line of questioning as to this prescription for the reason that it made an accusation against defendant of a crime other than those charged in the indictments. The court below overruled the objection, holding that the evidence was circumstantial and admissible in corroboration of the issues being tried. The officer also

testified that this prescription did not appear in any of the monthly reports. The officer also testified that the defendant told them that he filled this prescription on Sunday, March 11, 1956, in his drug store and that he was under the influence of alcohol at the time. They then had him write on the back of the prescription "This Rx filled Sunday by me 3/11/56" and sign it. The defendant also wrote: "In making this Rx I used four grains of Morph. Sulph." and defendant again signed it.

On May 23, 1956, the witness Wood having plead guilty and having been sentenced to prison and having made a statement implicating the present defendant, the officers obtained a warrant and went to the drug store of the defendant and arrested him. While they were in the drug store waiting for the arrival of the federal narcotic agent, the defendant picked up a prescription and started to crumble it, whereupon Detective Ruane took the prescription from the defendant. This prescription was marked Commonwealth's Exhibit No. 4 and was upon a blank of Raymond M. Andries, M.D., for a Joseph Woodward, address 1720 So. Bancroft, and was dated 3/4/56 and was for morphine sulphate cubes (5) and purported to be signed by Raymond M. Andries, M.D. There was testimony that each cube contained approximately one grain of morphine. There was no objection made by counsel for the defendant to this testimony. In a short time Ira Coleman, the federal narcotic agent, arrived at the drug store and he asked the defendant "for his duplicate opium order forms, for his annual inventories, and for his narcotic prescription file." He testified that it was a requirement of the federal government that a pharmacist keep on hand these duplicate order forms. He further testified that according to the defendant's records and the records of the various wholesale drug

houses in Philadelphia, the defendant made two purchases of morphine sulphate—one-eighth ounce on March 23, 1955 and one-eighth ounce on August 29, 1955. He testified that a quarter of an ounce amounted to a small fraction over 109 grains; that the defendant did not have any narcotics on hand on the date of this examination, to wit: May 23, 1956; that the defendant submitted his narcotic prescription file and that he had no prescription on that file between the dates of March 23, 1955 and May 23, 1956. He was shown Commonwealth's Exhibit No. 4 by Detective Ruane. He testified that the defendant stated that he reported a burglary to the police in which all of his narcotic stock was taken. He testified that the defendant told him that in the burglary he lost 40 grains of morphine powder and 40 grains of morphine in cube form. He pointed out that if the defendant be given credit for 80 grains of morphine which he alleged was taken from him in the burglary and if the 5 grains be added thereto for the Commonwealth's Exhibit No. 4 prescription, that would make a total of 85 grains, leaving 24 grains unaccounted for. If the 4 grains represented by the prescription in Commonwealth's Exhibit No. 3 be added to this, there would still be 20 grains unaccounted for. Dr. Raymond M. Andries testified that the prescription marked Commonwealth's Exhibit No. 4 was not signed by him. He also testified that he never prescribed morphine in cube form.

It was also stipulated that an officer attempted to serve a summons upon Joseph Woodward at 1720 So. Bancroft Street and that it could not be served upon him because the occupants, who had lived there for 17 years, said that Woodward did not live there and they did not know anybody by that name.

After a very full and adequate charge the court asked for any additions or corrections and counsel for

the defendant said: "I think your Honor made a very, very fair Charge. I'll say that, your Honor." The only specific exceptions taken were to the court's refusal of binding instructions. A general exception was also taken to the charge.

Counsel for the appellant does not question the sufficiency of the evidence to sustain the conviction. He argues (1) that it was error to admit testimony concerning the two prescriptions hereinbefore mentioned and (2) that it was fundamental error for the judge to consider this evidence in his charge.

"The general rule is that 'on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible.'" In *Com. v. Boulden*, 179 Pa. Superior Ct. 328, 332, 116 A. 2d 867, Judge WOODSIDE of this Court thoroughly considered the above rule and the exceptions thereto. Little need be added to what has been so well said by our brother. At page 334 he says: "There are, of necessity, a number of well established exceptions to the general rule, but before discussing them an examination of the rule itself is in order. The original rule of England and early America on this point was that evidence of the commission of a crime other than that charged was not admissible when relevant merely to show disposition. In other words if the evidence was relevant for any other purpose except to prove the defendant's disposition to commit the particular crime, or crimes generally, it was admissible. . . . The courts generally have not hesitated to create a new 'exception' to cover a case where the evidence seemed relevant for purposes other than disposition to commit crime. For this reason, probably more than any other, it is impossible to state

the exceptions with categorical precision." On page 336 he says: "Under the exceptions the commission of an offense by the defendant other than the one with which he is charged may be received for the purpose of showing intent, guilty knowledge, motive, identity, plan, the accused to be one of an organization banded together to commit crimes of the nature charged, *part of a chain of circumstances or one of a sequence of acts, or part of the natural developments of the facts,* or mental condition, when insanity is a defense or, within limitations, for the purpose of fixing the penalty in murder cases." (Emphasis supplied)

In the present case it must be remembered that it was charged in a number of indictments that the defendant did "feloniously deal in, dispense, sell, deliver, distribute, prescribe, traffic in and give away a certain drug. . . ." It must also be remembered that the defendant was charged with the commission of those crimes on the specific dates of February 28, March 3, March 4 and March 10, 1956 and that he was further charged with committing the crimes at divers times from September 29, 1955 to February 27, 1956. When the officers of the law visited the defendant's drug store on March 13 and May 23, 1956, they were undoubtedly seeking evidence to aid them in proving the illegal sales above described. It must also be remembered that the law required the defendant to preserve his records, and particularly his prescription blanks, for a two-year period "in such a way that it will be readily accessible to inspection by the proper authorities." It was shown that the defendant had purchased 109 grains of morphine sulphate on March 23 and August 29, 1955. The defendant could not produce any of this morphine sulphate. The officers then asked him to produce his records and particularly the prescriptions for the purpose of determining whether the de-

fendant had sufficient prescriptions on file to show the disposition of 109 grains of the drug. The defendant explained that 80 grains had been stolen from his store on either March 11 or 12, 1956. He could produce only two prescriptions, being Commonwealth's Exhibits Nos. 3 and 4, to show the disposition of 9 more grains of the drug. This still left 20 grains for which he could not properly account. The court below, in overruling the objection to this evidence, clearly stated that it was being admitted, not for the purpose of showing a crime or crimes other than that for which the defendant was indicted, but for the purpose of permitting circumstantial evidence in corroboration of the issues related to the crimes for which the defendant was specifically indicted. In our opinion the evidence was within one or more of the exceptions set forth above. If the defendant did not have on hand all of the 109 grains of the drug which he had purchased and could not satisfactorily explain its legal disposition, it would certainly be circumstantial evidence to corroborate the story of the other witnesses of the Commonwealth that sales had been made during this relevant period of time without doctors' prescriptions. If the jury believed all of the Commonwealth's evidence it could have concluded that the defendant disposed of 109 grains of the drug without prescriptions. The jury could also have concluded, if it believed all of the defendant's evidence, that 20 grains of the drug were disposed of by the defendant without prescriptions. The jury might also have found that 80 grains of the drug were or were not stolen from the defendant. It might also have found that either one or both of the prescriptions, being Commonwealth's Exhibits Nos. 3 and 4, were fraudulent, in which event the defendant would have had either 4, 5 or 9 more grains of the drug which he could have disposed of without prescriptions. While it is true that

counsel on both sides and the court in its charge may have asked questions or made statements which might tend to prove that the defendant had committed crimes other than those for which he was indicted, a thorough reading of the entire record in this case will reveal that the real purpose in permitting this evidence fell within one or more of the exceptions above mentioned. We might also dispose of the argument made in criticism of the charge by saying that no specific exceptions were taken thereto raising the points of law which the appellant now seeks to raise.

We are convinced that the appellant had a fair trial, free from any fundamental error, and that the evidence presented by the Commonwealth was entirely sufficient to justify the jury's verdict.

Judgment of sentence affirmed and it is ordered that appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the appeal was made a supersedeas.