**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Samuel Barton SLOCUM, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 11, 2013.

Filed Feb. 21, 2014.

David Ridge, Erie, for appellant.

Raymond R. Learn, II, District Attorney, Smethport, for Commonwealth, appellee.

BEFORE: DONOHUE, MUNDY and PLATT *, JJ.

OPINION BY PLATT, J.

Appellant, Samuel Barton Slocum, appeals from the judgment of sentence entered on February 28, 2012, following his jury conviction of concealment of the whereabouts of a child[1] and corruption of minors-misdemeanor of the first degree.[2] Appellant challenges the sufficiency of the evidence. We affirm.

The charges against Appellant, a Catholic priest living in Lewis Run, Pennsylvania, arose from his relationship with the victim, J.H., a minor who for years had lived adjacent to the church and rectory with his mother and younger brother.[3] In 2010, J.H., then thirteen, began spending increasing amounts of his time in the rectory, almost daily, including some overnight visits. Mother, who had to work until eight every evening, was happy at first that J.H. had a place to go to after school. But this soon changed.

At that time Appellant, with the help of neighborhood boys, had designed and decorated a teenager-oriented pool room on an upper floor of the rectory, which he made available to the boys, including J.H. and his brother.[4] The net effect was to make his home more inviting to J.H. and other minors. In an audio tape statement recorded by Pennsylvania State Police, and played to the jury at trial, Appellant conceded, with some hesitation, that he used the pool room to buy the friendship of the neighborhood boys, even though he agreed that their parents would not approve if they had known. (*See* Slocum Interview, 3/29/11, at 133) ("I think you're right; yeah. That's pretty much right; I bought them with little gifts and things like that and freedom. I think that's pretty much what it was, I think."). Appellant also conceded to the state police that the room was designed as a lounge for teenagers, not adults. (*See id.* at 176) ("Yeah, probably, because they're the ones that helped me make it.").

Appellant also gave many expensive electronic presents to J.H. in particular, including two iPhones, an iPod, a laptop

---

* Retired Senior Judge assigned to the Superior Court.

1.   18 Pa.C.S.A. § 2909.

2.   18 Pa.C.S.A. § 6301(a)(1)(i).

3.   The underlying facts and procedural history in this matter are taken, unless otherwise noted, from the trial court's September 12, 2012 opinion, the notes of trial testimony of January 16 through 18, 2012, and Appellant's recorded statement to the Pennsylvania State

Police, which was presented in redacted format to the jury at trial.

4.   At trial, J.H. testified, and Pennsylvania State Police Trooper Daniel Woods substantially confirmed, that the room included a pool table, a big screen television, lounge chairs, a computer with unlimited Internet access, video gaming systems, board games, a "mini-fridge" beverage center, and a snack counter. (*See* N.T. Trial, 1/16/12, at 10; N.T. Trial, 1/17/12, at 10).

computer, and a video game player, as well as designer clothing and cologne. He paid J.H. $20.00 an hour for doing relatively routine chores around the rectory, even though he paid others $10.00 an hour. The two communicated regularly through text messages and Facebook.

Mother became concerned about the amount of time J.H. was spending at the rectory, especially after she caught him in several lies about his activities. She spoke with him about this, but he continued to spend most of his free time there. On one occasion, Mother caught the victim sneaking out of the house in the middle of the night to go to the rectory.

At trial, Mother testified that J.H. had been caught skipping school in late December. (See N.T. Trial, 1/16/12, at 104). On January 10, 2010, the victim claimed he was ill and did not want to go to school. Because of the December incident, Mother told him to go to school. Instead, J.H. sneaked over to the rectory and spent the entire day with Appellant. Appellant knew the victim was supposed to be at school but did not contact either the school or Mother.

Mother punished the victim for skipping school by grounding him, taking away his cell phones and the other electronic gifts Appellant had given him, and forbidding him from going to the rectory. She also informed Appellant, by letter of January 13, 2011, that the victim was not allowed in the rectory, telling him to contact her for confirmation if the victim claimed he had her permission.

Instead, without Mother's knowledge, the victim used a second computer that Appellant gave him to maintain contact with him over Facebook. Because of the proximity of their homes, he was able to use Appellant's wireless network. In their Facebook communications, Appellant told the victim he missed him and expressed his disapproval of Mother's punishment.

In February 2011, in response to the victim's increasingly disobedient behavior and in an attempt to separate him from Appellant, Mother sent him to stay with his grandparents. One day, instead of returning to his grandparents' home after school as required, the victim went to visit Appellant. When J.H. did not return to his grandparents as expected, a flurry of phone calls ensued. Grandfather called Mother to see if she knew where J.H. was. Mother called Appellant, who first lied, saying he had not been home all day. However, by this time J.H. had returned and admitted to his grandparents that he spent the afternoon with Appellant, who gave him a ride back. When Mother called again, Appellant refused to say whether he had seen the victim that day. (See id. at 108). Mother told Appellant she did not want him to have any further contact with J.H. (See id.).

Shortly after, Mother saw the victim sneaking over to the church to retrieve a DS hand-held video game system that Appellant had purchased for him. Because of this, Mother told Appellant he was to have no contact with J.H. and that she was calling the bishop. (See id. at 11). The next morning Mother found a series of messages between Appellant and J.H. on various phones. She called the police.

After interviewing both Mother and the victim, Pennsylvania State Police obtained a search warrant for Appellant's computers and similar items. While they were at Appellant's home, he arrived. As already noted, he gave a lengthy statement to the state police. He admitted allowing the victim in his residence and concealing his whereabouts from his Mother, engaging in an inappropriate relationship with J.H., taking him and other boys out of town

without informing their parents, and aiding J.H. in deceiving his Mother.

Following a trial, the jury convicted Appellant of the two offenses previously noted.[5] The trial court also found Appellant guilty of corruption of minors as a summary offense. (*See* Appellant's Brief, at 2); *see also* 18 Pa.C.S.A. § 6301(a)(2) (aiding or abetting truancy). On February 28, 2012, the trial court sentenced Appellant to an aggregate term of two years' probation.[6] The instant, timely appeal followed.[7]

On appeal, Appellant presents the following two questions for our review:

I. The verdict of guilty of concealment of the whereabouts of a child must be vacated where the child was never concealed by [Appellant], and where there was never any evidence that [Appellant] removed the child from his residence or failed to return him home? [sic]

II. Should the verdict of guilty of corruption of minors be vacated since the Commonwealth did not prove that [Appellant] encouraged or enticed the juvenile to disobey his parents and where acts of disobedience did not rise to the level of conduct prohibited by the corruption of minors statute?

(Appellant's Brief, at vii).

Both of Appellant's questions challenge the sufficiency of the evidence. Our standard of review for a challenge to sufficiency is well-settled.

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presump-

---

**5.** The jury acquitted Appellant of interference with custody of children, and loitering and prowling at nighttime. (*See* Trial Court Opinion, 9/12/12, at 1).

**6.** The court also directed, *inter alia*, that Appellant perform a hundred hours of community service, undergo a mental health evaluation, follow through with any recommended treatment, and pay restitution of $1,591.82 to Mother. The court did not impose any additional sentence for the conviction of corruption of minors as a summary offense. (*See* Order of Sentence, 2/28/12).

**7.** Appellant filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P.1925(b) on April 4, 2012. The trial court filed an opinion on September 12, 2012. *See* Pa.R.A.P.1925(a).

tion of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Bostick,* 958 A.2d 543, 560 (Pa.Super.2008), appeal denied, 604 Pa. 702, 987 A.2d 158 (2009) (quoting *Commonwealth v. Smith,* 956 A.2d 1029, 1035–36 (Pa.Super.2008) (en banc)).

■ In his first claim, Appellant argues "[t]here was no evidence that [he] ever removed the juvenile from his residence" within the meaning of the statute and no evidence that he ever "acted with the intent to conceal [the victim's] whereabouts from his parent, specifically his mother." (Appellant's Brief at 19) (internal quotation marks omitted). We disagree.

A person commits concealment of the whereabouts of a child when he or she:
    ... removes a child from the child's known place of residence with the intent to conceal the child's whereabouts from the child's parent or guardian, unless concealment is authorized by court order or is a reasonable response to domestic violence or child abuse, commits a felony of the third degree. **For purposes of this subsection, the term "removes" includes** personally removing the child from the child's known place of residence, causing the child to be removed from the child's known place of residence, preventing the child from returning or being returned to the child's known place of residence and, **when the child's parent or guardian has a reasonable expectation that the person will return the child, failing to return the child to the child's known place of residence.**

18 Pa.C.S.A. § 2909(a) (emphases added).

In this case, the evidence of record establishes that, in a letter dated January 13, 2011, from Mother to Appellant, Mother specifically informed Appellant that the victim was "grounded and not allowed at your house, so I would appreciate it if he was [sic] to sneak over, if you would send him home. If he says he's allowed over, please call me ... and confirm it." (N.T. Trial, 1/16/12, at 122). In his statement to the state police, Appellant admitted that, **after** he received the letter and during the time that the victim was supposed to go to his grandparents' home after school, the victim came to his (Appellant's) home and Appellant did not call Mother or send J.H. home as instructed by the letter. (*See* Slocum Interview, 3/29/11, at 2–3).

Viewed in the light most favorable to the Commonwealth as verdict winner, this evidence is more than sufficient to support a finding that Mother had a reasonable expectation that Appellant would return the victim to his place of residence and that Appellant did not do so.

■ Furthermore, as to intent, because Appellant did not promptly return J.H. to his grandparents' home or call Mother, as she specifically requested in her letter, and in fact lied about it, the jury could properly infer that Appellant intentionally concealed J.H.'s whereabouts from Mother. Accordingly, viewing the evidence in the light most favorable to the Commonwealth as verdict winner under our standard of review, we conclude that the evidence was more than sufficient to convict Appellant of concealment of the whereabouts of a child. Appellant's first claim fails.

■ In his second issue, Appellant claims that the evidence was insufficient to sustain his conviction of corruption of a minor. (*See* Appellant's Brief, at 26–31). Again, we disagree.

Appellant acknowledges that there may have been issues about the appropriate-

ness of his actions, but maintains that "there was no evidence that [he] attempted to encourage the child to commit any crime, to violate his probation or parole or commit any act which the statute was designed to prohibit." (*Id.* at 17). Appellant's issue does not merit relief.

An individual commits the crime of corruption of minors when:

> ... Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts **or tends to corrupt** the morals of any minor less than 18 years of age, **or** who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.
>
> * * *
>
> **(b) Adjudication of delinquency unnecessary.**—A conviction under the provisions of this section may be had whether or not the jurisdiction of any juvenile court has attached or shall thereafter attach to such minor or whether or not such minor has been adjudicated a delinquent or shall thereafter be adjudicated a delinquent.

18 Pa.C.S.A. § 6301(a)(1)(i) and (b) (emphases added).

Our Supreme Court has explained:

> The Commonwealth need not prove that the minor's morals were actually corrupted. Rather, a conviction for corrupting morals will be upheld where the conduct of the defendant tends to corrupt the minor's morals. The statute speaks to conduct toward a child **in an unlimited variety of ways** which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct.

*Commonwealth v. Mumma,* 489 Pa. 547, 414 A.2d 1026, 1030 (1980) (citations and quotation marks omitted) (emphasis added).

Similarly, this Court has explained that:

> The statute requires that the knowing, intentional acts of the perpetrator **tend** to have the effect of corrupting the morals of a minor.
>
> This court has visited the question of what constitutes "corruption" of a minor's morals before. In *Commonwealth v. Decker,* 698 A.2d 99, 101 (Pa.Super.1997) [*appeal denied,* 550 Pa. 698, 705 A.2d 1304 (1998)], we held that actions that tended to corrupt the morals of a minor were those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain."

*Commonwealth v. DeWalt,* 752 A.2d 915, 918 (Pa.Super.2000) (emphasis in original, one citation omitted).[8]

*Decker* had explained that:

> In deciding what conduct can be said to corrupt the morals of a minor, " '[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.' " *Commonwealth v. Pankraz,* 382 Pa.Super. 116, 121, 554 A.2d 974, 977 (1989), quoting *Commonwealth*

---

**8.** The Concurrence states that the appellant in *DeWalt* was convicted of corruption of minors and indecent exposure. (*See* Concurrence, at 286 n. 6). For clarity and completeness we add that the convictions were vacated and reversed by this Court on appeal, with direction to the trial court to enter a judgment of acquittal on both charges. *See DeWalt, supra,* at 919. Accordingly, we are unable to accept the Concurrence's conclusion that *DeWalt* supports its argument for the requirement of a predicate criminal act.

*v. Randall,* 183 Pa.Super. 603, 133 A.2d 276 (1957), *cert. denied,* 355 U.S. 954, 78 S.Ct. 539, 2 L.Ed.2d 530 (1958). Furthermore,

> Corruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected. *Commonwealth v. Todd,* 348 Pa.Super. 453, n. 2, 502 A.2d 631, 635 n. 2 (1985), citing *Commonwealth v. Burak,* 232 Pa.Super. 499, 335 A.2d 820 (1975).

*Decker,* supra at 101.[9]

This Court has long recognized that:

> It is obvious that the mandates of the statute are salutary measures designed to protect children. The ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency. The general language of the statute, therefore, is not a valid objection to it on constitutional grounds. Unless words of such seeming generality as 'moral' and 'immoral' were valid in statutes, government itself would become impossible. Manifestly, there can be no objection to the use, in a statute, of words like 'corrupt the morals' or 'tends to corrupt the morals of any child,' which include many things, all of which are intended by the legislature to be covered; otherwise, there would be barred from statutory use such customary verbiage as 'fraudulent,' 'due,' 'negligent,' 'arbitrary,' 'reasonable,' etc.

*Randall, supra* at 280 (some internal quotation marks and citation omitted).

Similarly, this Court has more recently stated:

> [C]orruption of a minor can involve conduct towards a child in an unlimited

---

9. The concurring opinion chides this Court for failing to recognize that *Decker* is "an anomaly." (Concurring Opinion, at 283 n. 3). We respectfully disagree. On review, we find no controlling authority (or decision of any other kind) which reaches the same conclusion as the concurrence. To the contrary, the only "anomaly" in *Decker* is that the underlying corrupting conduct (sexual intercourse by 37 year-old man with 15 year-old minor he had just met, who was silent during the act) became criminal conduct four months later when the offense of statutory rape was amended. Recognizing that his conduct, which preceded the amendment, was not criminal at the time he committed it, Decker argued that because it was not, he could not be convicted of corruption of a minor, the identical argument urged in the concurrence.

See *Decker, supra* at 100 ("In short, appellant contends that underlying criminal activity must be the requisite upon which a corruption of minors charge is placed."); *see also* Concurrence, *infra,* at 281. The *Decker* Court rejected this claim, holding that under the statute and a long line of cited controlling authority, no underlying criminal act was required. *See id.* at 100–101. This Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court. *See Dixon v. GEICO,* 1 A.3d 921, 925–26 (Pa.Super.2010) (citing cases). The concurrence fails to explain how its assumption of a criminal act predicate can be reconciled with the "any act" language of the statute or with this long line of caselaw. The holding in *Decker* is still good law, not an "anomaly."

number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need to be protected.

*Commonwealth v. Barnette,* 760 A.2d 1166, 1173 (Pa.Super.2000), appeal denied, 566 Pa. 634, 781 A.2d 138 (2001) (quoting *Decker,* supra at 101).

Here, Appellant argues that he never abetted or encouraged the victim to commit a delinquent act and that a child's disobedience of his parent is not the kind of violation that the statute was intended to prevent. (*See* Appellant's Brief, at 26–27).[10] Appellant's claim lacks merit.

Notably, a few pages later in the brief, Appellant concedes that "a charge of [c]orruption of [m]inors does not fail merely because the underlying act that the juvenile was involved in was not a specific criminal act." (*Id.* at 30). In this respect, at least, Appellant is correct. As previously noted, the statute specifically states that a conviction for corruption of minors need not be predicated upon an adjudication of delinquency. *See* 18 Pa.C.S.A. § 6301(b).

Rather, as already noted, our Legislature has defined the offense of corruption of minors using three clauses separated by the disjunctive word "or;" the first clause prohibits **"any** act [which] corrupts **or tends to corrupt** the morals of any minor less than 18 years of age[.]" 18 Pa.C.S.A. § 6301(a)(1)(i) (emphases added).

Furthermore, in *Decker* this Court specifically held that there is no requirement of any underlying criminal activity in a corruption of minors charge. The *Decker* Court explained:

[W]hile it is true that generally a corruption of minors charge accompanies a more serious charge such as involuntary deviate sexual intercourse, statutory rape, indecent assault, etc., nowhere in the statute is there a requirement of such underlying criminal activity, nor will one find a prohibition against a charge of corruption of minors standing alone. Moreover, the statute states "by any act" not "by any criminal act." The fact that a corruption of minors charge is generally coupled with additional underlying criminal activity is more a reflection of the usual application of the statute than it is legal precedent. We believe that if our legislators intended to require some underlying criminal activity as the basis for a corruption of minors charge, they would have written it into the statute.

*Decker,* supra at 100.

Therefore, our controlling authority has consistently recognized that the statute

---

**10.** The concurring opinion asserts that this reference to Appellant's argument is incorrect. (*See* Concurring Opinion, *infra,* at 281–82, n. 1). We are constrained to disagree. For clarity and completeness, we note that in pertinent part, in the paragraph **preceding** the language quoted in the concurrence, Appellant argues as follows:

However, since the evidence showed that the juvenile had a history of being disobedient to his mother and that the defendant never

specifically encouraged or enticed the juvenile to be disobedient, the jury's verdict of guilty of Corruption of Minors must be vacated....
Needless to say, the juvenile did not commit any crime, either as a conspirator, accomplice or accessory....
**Accordingly,** the only issues before this Court are (etc.).
(Appellant's Brief, at 26–27) (emphasis added). The quoted language in the argument tracks the summary language in the headnote. (*See id.* at 26).

plainly provides with respect to the first alternative that one commits this offense if by **any** act, not any criminal act, he or she corrupts or tends to corrupt a minor. To ignore the independence of these clauses by requiring evidence of delinquent[11] or criminal conduct would render the first clause meaningless.[12]

In this case, the relevant charge of corrupting the morals of a minor alleges that Appellant committed the offense by "enticing a 15–year–old juvenile male to disobey his parents [sic] through enticement and encouragement knowing he was not permitted to do so." (Amended Criminal Information, 4/02/12, at unnumbered page 1). Appellant's conduct is established in Facebook exchanges between him and his victim, read into the record at trial (as taken verbatim from the Commonwealth's Brief):

> At trial, several exchanges between Slocum and J.H. on Facebook were read into the record. In these exchanges, Slocum, a 59 year-old [C]atholic priest talks with J.H. a then 14/15 year-old boy who lives next door, enter[s] into conversations about several topics. J.H. testified that he has known Slocum for ten or eleven years (RR p. 8) and that he started seeing more of Slocum when he was 13 or 14 years old (RR. P. 10). J.H. testified, as has been previously outlined

in this brief, about the expensive gifts and items that Slocum would give him as well as money for menial chores around the parish. J.H. and Slocum exchanged racist jokes (RR pp. 28–29). Slocum on January 18, 2011[,] tells J.H. that he received a letter from J.H.'s mother telling Slocum that J.H. is grounded and not to be at the rectory. Slocum then sends the contents of the letter to J.H. (RR pp. 29–30). Slocum later comments that:

> I think you are punished way too much and I don't think it's fair, but I really don't have anything to say about it. I know you put up with a lot at home[.] I want to be always there for you, if you need me. The reason I am going to send the letter back to your mom the way I did is I could never send you back home. You know I love you and would do anything I can to help. I don't think you should let your mom or [J.H.'s younger brother] know when you have my laptop. You can always leave it in the church and get it when you come home. (RR p. 30).

Slocum goes on to say:

> She will probably stop punishing you quicker [if] she thinks we're not connected at all. If she finds that laptop,

---

11. Moreover, we are concerned by the use of the term "delinquent" in this context. In the Juvenile Act, "Delinquent child" is statutorily defined as "A child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation." 42 Pa.C.S.A. § 6302. Therefore, a child under ten years of age cannot commit a delinquent act as statutorily defined. Accordingly, to require evidence of a delinquent act or an attempt to commit a delinquent act by a victim to sustain a conviction for corruption of minors would result in the absurdity of excluding the youngest, most vulnerable children from the protection of the statute. *See* 1 Pa.C.S.A. § 1922(1) ("[T]he General Assembly does not intend a

result that is absurd, impossible of execution or unreasonable."); and (2) ("[T]he General Assembly intends the entire statute to be effective and certain.").

12. To vacate Appellant's conviction because the victim did not engage in delinquent activity would also fail to "to give effect to all [the] provisions" of the corruption of minors statute. *Commonwealth v. Velez,* 51 A.3d 260, 266 (Pa.Super.2012) (citation omitted). Further, it is only the second alternative form of the offense in Section 6301(a)(1)(i) which contains the "aids, abets, entices or encourages" language. 18 Pa.C.S.A. § 6301(a)(1)(i).

she will know we have been together ... I'm changing it because I couldn't tell on you and I don't feel comfortable talking to her. How did she find out you were at my house? We will have to be more careful in the future. I can't wait until this is all over ... I am also going to say in the letter you have not been here since she started grounding you. (RR p. 31).

(Commonwealth's Brief, at 7–8) (emphasis omitted).

The actions of Appellant are not in dispute. Therefore, the question of sufficiency for the corruption of minors conviction ultimately rests on whether Appellant's actions were of a type that would offend "the common sense of the community and the sense of decency, propriety and morality which most people entertain." *DeWalt, supra,* at 918.[13]

Under our standard of review, we conclude that the jury could properly decide that Appellant's actions were of such a type. Viewed in the light most favorable to the Commonwealth, together with all reasonable inferences, there was more than sufficient evidence for the jury to convict Appellant of corruption of minors.[14]

13. We also note the trial court's factual finding that "[t]he pattern of lies and deceit was evidence of corrupted morals." (Trial Ct. Op., at 7).

14. The concurrence characterizes the defining language of the corruption of minors statute as "highly subjective." (Concurrence, at 284–85, 285) It rejects the "common sense of the community" standard which, as we have documented in detail, has been accepted as controlling authority, and constitutional, for over half a century. It hypothesizes that our decision will allow "judges and juries to randomly criminalize perceived acts of impropriety." (*Id.* at 286). We respectfully disagree. We decide this appeal under our standard of review, which views the evidence of record in the light most favorable to the Commonwealth as verdict winner, under

*See Bostick, supra* at 560. Appellant's second claim fails. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

DONOHUE, J., files a Concurring Opinion.

## CONCURRING OPINION BY DONOHUE, J.:

I join the Majority's determination with regard to Slocum's conviction of concealing the whereabouts of a child. While I concur in the decision to affirm Slocum's conviction of corruption of the minors, I must distance myself from the Majority's reasoning with regard to this determination. In my view, the evidence was sufficient to support Slocum's conviction of corruption of minors only because he was convicted of the separate crime of concealing the whereabouts of that minor. As will be discussed, consistent with decades of precedent from our Supreme Court and this Court, I conclude that a corruption of minors conviction must be tied to a predicate act by the defendant that would satisfy the definition of a crime if proven beyond a reasonable doubt.[1]

controlling caselaw which continues to be binding precedent.

1. As a preliminary matter, I note that the Majority begins its discussion regarding this conviction by stating that Slocum "argues that he never abetted or encouraged the victim to commit a delinquent act and that a child's disobedience of his parents is not the kind of violation that the statute was intended to prevent." Maj. Op. at 279. This is incorrect. In his brief, Slocum states, "the only issues before this Court are whether the evidence met the Commonwealth's burden of proof and whether the child's disobedience is a type of violation that Corruption of Minors was intended to prevent." Appellant's Brief at 27. Slocum makes no argument regarding abetting or encouraging a delinquent act. The Majority's discussion thereof is not on

In 1980, the Pennsylvania Supreme Court decided *Commonwealth v. Mumma*, 489 Pa. 547, 414 A.2d 1026 (1980). At that time, the corruption of minors statute provided, in its entirety, as follows:

> Whoever, being the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, is guilty of a misdemeanor of the first degree.

CRIMES AND OFFENSES, 1996 Pa. Legis. Serv. Act 1996–98 (S.B. 1254).[2] The appellant in *Mumma* was convicted of indecent assault and corruption of minors. *Mumma*, 489 Pa. at 555, 414 A.2d at 1027. Mumma's convictions were based upon findings that he touched a 12–year–old male's genitals after convincing him to undress for a physical examination, which the appellant required for admission to his "club." *Id.* at 550, 414 A.2d at 1027. The Supreme Court granted allowance of appeal in *Mumma* and primarily addressed whether the evidence was sufficient to support the defendant's indecent assault conviction. Perhaps as a result of this focus, the discussion regarding the corruption of minors conviction is brief. Nevertheless, of relevance here, the defendant argued that the evidence was insufficient to support his corruption of minors conviction because the Commonwealth failed to prove that the minor's morals were actually corrupted. Our Supreme Court rejected his claim, stating as follows:

> The Commonwealth need not prove that the minor's morals were actually corrupted. Rather, a conviction for corrupting morals will be upheld where the conduct of the defendant 'tends to corrupt' the minor's morals. The statute speaks to conduct 'toward a child in an unlimited variety of ways which tends to produce or to encourage or to continue *conduct of the child which would amount to delinquent conduct.*'

*Id.* (citations omitted) (emphasis added).

Although the Supreme Court defined conduct that corrupts or tends to corrupt a minor's morals as conduct that encourages delinquency, the Supreme Court did not discuss how, in *Mumma*, this requirement was met. Instead, in *Mumma* and the cases from this Court that have come since, we have presumed corruption of the minor by virtue of the commission of a crime in which the minor was the victim or, in far fewer incidences, the commission of a crime in the presence of the minor. The vast majority of the published cases after *Mumma* applying the "any act that corrupts or tends to corrupt" language of Section 6301(a)(1) involve sexual assault committed against a minor victim, *see, e.g.*, *Commonwealth v. Cesar*, 911 A.2d 978 (Pa.Super.2006) (corruption of minors conviction based on sexual abuse of five-year-old daughter that constituted indecent assault); *Commonwealth v. Charlton*, 902 A.2d 554 (Pa.Super.2006) (corruption of

point with the issue presented in this appeal. I believe that the Majority's recitation of Slocum's argument on this point supports this conclusion. *See* Maj. Op. at 278 n. 9.

**2.** The current statute retains this language in subsection (a)(i) and creates more specific categories for sex crimes committed by the defendant (18 PA.C.S.A. § 6301(a)(1)(ii)) and truancy (18 Pa.C.S.A. § 6301(a)(2)). The grading of the sex crimes offense in subsection (a)(1)(ii) is increased to a third-degree felony. 18 Pa.C.S.A. § 6301(a)(1)(ii). Conversely, the grading of the truancy offense in subsection (a)(2) is lowered to a third-degree misdemeanor. 18 Pa.C.S.A. § 6301(a)(2). As discussed in footnote 3 *infra*, the statute was amended to include subsections (a)(1)(ii) and (a)(2) in 2010 and 1996, respectively.

minors conviction based on rape, involuntary deviate sexual intercourse an indecent assault of minor daughter); *Commonwealth v. Judd*, 897 A.2d 1224 (Pa.Super.2006) (corruption of minors based upon rape and indecent assault of minor); *Commonwealth v. Snyder*, 870 A.2d 336 (Pa.Super.2005) (rape, indecent assault, involuntary deviate sexual intercourse and statutory sexual assault underlie corruption of minors conviction); *Commonwealth v. Smith*, 863 A.2d 1172 (Pa.Super.2004) (sexual assault and indecent assault of minor victims sufficient to support corruption of minors conviction); *Commonwealth v. Bishop*, 742 A.2d 178 (Pa.Super.1999) (evidence was sufficient to support conviction of corruption of minors where defendant sexually abused his five-year-old step-granddaughter and was convicted of involuntary deviate sexual intercourse, aggravated indecent assault and indecent exposure); *Commonwealth v. Halye*, 719 A.2d 763 (Pa.Super.1998) (*en banc*) (sex crimes of defendant toward child sufficient to support conviction of corruption of minors); *Commonwealth v. Bricker*, 397 Pa.Super. 457, 580 A.2d 388 (1990) (sexual assault of 11–year–old); *Commonwealth v. Pankraz*, 382 Pa.Super. 116, 554 A.2d 974, 976 (1989) (corruption of minors conviction upheld where defendant's conduct was repeatedly inserting object into minor daughter's vagina); *Commonwealth v. Todd*, 348 Pa.Super. 453, 502 A.2d 631 (1985) (indecent exposure supporting corruption of minors convictions). The remaining outlier cases involve other criminal activity by the adult defendant in the presence of a minor. *See, e.g., Commonwealth v. Barnette*, 760 A.2d 1166, 1173 (Pa.Super.2000) (corruption of minors conviction upheld where defendant deceived minor into accepting delivery of package containing contraband); *Commonwealth v. Williams*, 285 Pa.Super. 515, 428 A.2d 165 (1981) (corruption of minors charge based upon exposing minor to illegal narcotic drug use). Like the Supreme Court in *Mumma*, this Court did not discuss how the underlying acts of the defendant tended to corrupt, or corrupted, the minor's morals in any of these cases. I can discern only the presumption that the criminal nature of the act committed against or in the presence of the minor corrupted, or had the tendency to corrupt, the minor's morals.[3]

It is important to note that this presumption requires criminal conduct by the actor, not a criminal conviction. Indeed, this is in line with the definition of corruption of minors, which provides that one is guilty by the commission of *"any* act [that] corrupts or tends to corrupt the morals of

**3.** I have found only one case in which the conduct underlying the corruption of minors charge was not defined as a crime by the legislature. That case is *Commonwealth v. Decker*, 698 A.2d 99 (Pa.Super.1997) (Opinion by Tamilia, J., Cercone, P.J.E. joins, Hudock, J. concurs in result). In *Decker*, a 37–year–old man had sexual intercourse with a 15–year–old girl. At the time of the event, this was not a criminal act because the age of consent was 14. However, this conduct was criminalized four months after Decker was charged, as the age of consent was raised from 14 to 16 years of age. *See id.* at 102 n. 5. Thus, by the time the defendant was tried, his conduct had been criminalized, a fact referenced twice by the *Decker* majority. *Id.* at

102. Contrary to the Majority's reference, *Decker* does not cite to a long line of controlling authority than no underlying criminal act was required. Maj. Op. at 277 n. 8. Further, the well-versed Majority cites no other case in which a defendant was convicted of corruption of minors without the commission of an accompanying criminal act against or in the presence of the minor. I must conclude that my research is not faulty and, indeed, *Decker* is the only case that allowed for a conviction of corruption of minors without the attendant criminal conduct. To me, *Decker* is appropriately viewed as an anomaly. In my view, if it is more than the anomaly I believe it to be, then *Decker* should be considered by the Superior Court *en banc*.

any minor[.]" 18 Pa.C.S.A. § 6301(a)(1)(i) (emphasis added). While the majority of cases involve a corruption of minors conviction *and* a conviction for the criminal conduct that formed the basis of the corruption of minors charge, I have found two instances in which the defendant was charged in this manner but convicted of corruption of minors alone. *See Bricker*, 397 Pa.Super. 457, 580 A.2d 388 (acquitted of indecent assault and involuntary deviate sexual intercourse but convicted of corruption of minors); *Commonwealth v. Anderson*, 379 Pa.Super. 589, 550 A.2d 807 (1988) (acquitted of indecent assault but convicted of corruption of minors). In both of these cases, the defendants argued that their corruption of minors convictions could not stand because they were acquitted of the crimes charged as the basis for the corruption of minors charges. In both cases, this Court rejected the defendants' positions based on the well-established principles that there is no requirement for consistent verdicts in criminal cases and that an acquittal cannot be viewed as a specific finding with regard to any particular portion of the evidence. *Anderson*, 550 A.2d at 809–10; *Bricker*, 580 A.2d at 389.

I concur in the result reached by the Majority because in this case, there is no question that Slocum's acts were criminal. Slocum was convicted of concealing the whereabouts of a child, and the victim of that crime—the child who was wrongfully concealed—was J.H. Thus, in accordance with *Mumma* and the subsequent case law from this Court, I conclude that there is a presumption that Slocum's commission of this crime against J.H. constitutes an act that corrupted or tended to corrupt J.H.'s morals, and therefore, that the evidence is sufficient to support Slocum's corruption of a minor conviction.

Finally, I note my unease with the standard endorsed by the Majority, not only because it departs from precedent, but because of the danger of its unpredictable application across the Commonwealth. Presently, the entire definition of corruption of minors is as follows:

(a) Offense defined.—

(1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

(ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

(2) Any person who knowingly aids, abets, entices or encourages a minor younger than 18 years of age to commit truancy commits a summary offense. Any person who violates this paragraph within one year of the date of a first conviction under this section commits a misdemeanor of the third degree. A conviction under this paragraph shall not, however, constitute a prohibition under section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms).

18 Pa.C.S.A. § 6301(a).

The provision under which Slocum was charged, Section 6301(1)(i), addresses three types of conduct: acts that corrupt or tend to corrupt the morals of a minor; aiding, abetting, enticing or encouraging a

minor to commit a crime; and assisting or encouraging a minor to violate parole or an order of court. Without question, the language used to define the first category of conduct is highly subjective. We know only that it excludes sexual conduct, as that is addressed in Section 6301(1)(ii), and truancy, as that is addressed in Section 6301(2).[4] My analysis of this Court's precedent leads me to the conclusion that we have consistently given definition to the

otherwise highly subjective "by any act" language by requiring the coupling of a conviction of corruption of minors with a predicate act by the defendant that would satisfy the definition of a crime if proven beyond a reasonable doubt. *See* survey of cases *supra* at 282–84.

The Majority endorses the application of a definition of acts that "corrupt or tend to corrupt the morals of a minor" that is, in my view, constitutionally questionable [5]:

4. Section 6301 was amended to include subsection 6301(a)(1)(ii), addressing sex crimes, in October 2010 with an effective date of December 6, 2010. Therefore, this provision was in effect in 2011, when Slocum was charged in connection with this case. Section 6301(a)(2) (relating to truancy) was added to this statute by amendment in 1996. I note that Slocum was charged and convicted under the truancy provision, and he does not challenge that conviction on appeal.

5. The constitutionality of this language has not been challenged in 56 years, since this Court's decision in *Commonwealth v. Randall*, 183 Pa.Super. 603, 133 A.2d 276 (1957). In my view, this is because our Court has confined the definition of an act that corrupts or tends to corrupt the morals of a minor to acts that amount to criminal conduct. No court, before this Majority, has applied the statute to behavior remotely similar to the conduct here with or without a predicate criminal act.

I further note that the Pennsylvania Supreme Court discussed indefinite language similar to the corruption of minors statute in addressing the statute prohibiting endangering the welfare of a child ("EWOC"), which, at the time, provided as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." *Commonwealth v. Mack*, 467 Pa. 613, 615, 359 A.2d 770, 771 (1976) (quoting 18 Pa.C.S.A. § 4304). The Supreme Court noted the purpose of such statutes is to protect juveniles and therefore they are to be broadly construed. It also reiterated the language relied upon here by the Majority, that such juvenile statutes should be defined by "[t]he common sense of the community, as well as the sense of decency, propriety and

the morality which most people entertain" in order to "individuate what particular conduct is rendered criminal by it." *Id.* at 618, 359 A.2d at 772. The actual holding, rejecting the vagueness challenge to the EWOC statute, is based on the notion of a shared common sense of when a particular action would endanger a juvenile:

> Thus, statutes such as the one at issue here are to be given meaning by reference to the 'common sense of the community' and the broad protective purposes for which they are enacted.... Phrases such as 'endangers the welfare of the child' and 'duty of care, protection or support' are not esoteric. Rather, they are easily understood and given content by the community at large. An individual who contemplates a particular course of conduct will have little difficulty deciding whether his intended act 'endangers the welfare of the child' by his violation of a 'duty of care, protection or support.'

*Id.* There can be little disagreement as to whether a particular conduct will endanger a child as this statute punishes threats to a child's physical or psychological welfare, and not his or her moral fiber. *See Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa.Super.2012) (stating the aim of the EWOC statute to be protection of children's physical and psychological welfare). I cannot agree that there is a commonly shared sense of what conduct tends to corrupt a minor's morals such that would allow us to reliably believe that a uniform standard would be applied by judges and juries across the Commonwealth. Nor do I believe that a defendant is put on notice that a particular course of conduct will violate the corruption of minors statute as interpreted by the Majority.

Further, in rejecting the vagueness challenge in *Mack*, the Supreme Court emphasized the

*ad hoc* determinations that actions "offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." Maj. Op. at 277 (quoting *Commonwealth v. De-Walt*, 752 A.2d 915, 918 (Pa.Super.2000)).[6] Without the factual predicate of some defined criminal conduct, the Majority's ruling allows judges and juries to randomly criminalize perceived acts of impropriety. Because the approach sanctioned by the Majority departs from our precedent and allows for the conviction of a citizen of crime based on conduct our legislature has not specifically criminalized, I cannot endorse it.

As discussed at the outset of this Concurring Opinion, our case law has given definition to the language of the corruption of the morals of a minor statute which criminalizes "any act" that corrupts or tends to corrupt the morals of a minor. Our precedent requires that a corruption of minors conviction must be tied to a predicate act by the defendant that would satisfy the definition of a crime if proven beyond a reasonable doubt. I cannot agree with the Majority's failure to recognize this precedent and its application of a vastly indeterminate standard in its place.

For the foregoing reasons, I join in the Majority's decision to affirm the judgment of sentence on the conviction of concealing the whereabouts of a child and concur only in the result in affirming the conviction of corruption of minors.

---

duty component of the EWOC statute, stating that "[p]hrases such as ... 'duty of care, protection or support' are not esoteric.... An individual who contemplates a particular course of conduct will have little difficulty deciding whether his intended act 'endangers the welfare of the child' by his violation of a 'duty of care, protection or support.'" *Mack*, 467 Pa. at 618, 359 A.2d at 772. The nonesoteric notion of physical harm and the requirement of a duty provide ascertainable parameters for the EWOC statute's implementation which do not exist in the corruption of minors statute.

6. *DeWalt* was convicted of corruption of minors and indecent exposure. *DeWalt*, 752

A.2d at 916. Thus while the general definition recited by the Majority appears in *De-Walt*, an underlying criminal act supported the conviction for corruption of morals of a minor. In fact, the language from *DeWalt* quoted by the Majority appears in many of the cases summarized *supra* at 282–84 to illustrate the requirement of predicate criminal conduct. *See Snyder*, 870 A.2d at 351; *Smith*, 863 A.2d at 1177; *Pankraz*, 554 A.2d at 977; *Todd*, 502 A.2d at 635 n. 2; *Barnette*, 760 A.2d at 1173. Thus, although the general definition is often repeated, it has not been outcome determinative.