J-S48013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOMINIC SOUTO DIAZ | |
| Appellant | No. 1257 WDA 2015 |

Appeal from the Judgment of Sentence July 17, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0003451-2014

BEFORE:  BOWES, DUBOW AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J:                    **FILED JUNE 24, 2016**

Dominic Souto Diaz appeals from the July 17, 2015 judgment of sentence imposed following his conviction of first-degree murder, aggravated assault, recklessly endangering another person, possessing an instrument of crime, and firearms not to be carried without a license.  We affirm.

The record reveals the following.  On August 23, 2014, Appellant shot and killed a bouncer, Hercules Rieger, outside The Bearded Lady, an after-hours establishment located near 11th Street and Wayne Street in Erie, Pennsylvania.  A resident of that neighborhood, Javon Martin, testified that he heard Appellant and Mr. Rieger, both known to him, arguing near the entrance of The Bearded Lady.  *Id*. at 65.  He saw Mr. Rieger punch

Appellant. N.T., 5/12/15, at 59. He reported that Appellant collapsed to the ground after being struck by Mr. Rieger, but then arose and left the scene. *Id*. at 60-61. Shortly thereafter, Mr. Martin observed Appellant walking back toward the club. *Id*. at 63. He saw Appellant retrieve a gun from his waistband and shoot Mr. Rieger. *Id*.

Another resident of the neighborhood, Jamie Barlorin, testified that he saw and heard two men arguing. He later identified the men from a photographic array as Appellant and bouncer Marzell Stovall. *Id*. at 116. Mr. Barlorin saw Mr. Stovall strike Appellant in the head with a tire iron. Mr. Barlorin heard a gunshot approximately twenty minutes later and he placed a 911 call. *Id*. at 117, 120.

Jomo McAdory was also working as a bouncer at The Bearded Lady the night of the shooting. He confirmed that there was a physical altercation involving Rieger and Appellant and that Appellant was knocked to the ground. N.T., 5/13/15, at 38-39. McAdory testified that, approximately ten to fifteen minutes later, he heard a gunshot and saw Rieger fall to the ground, but he did not see who fired the shot. *Id*. at 40.

Dr. Eric Vey, a forensic pathologist, testified that he performed an autopsy on the victim. He concluded that Mr. Rieger died due to a single gunshot wound to the chest. *Id*. at 148. The bullet pierced the breastbone, impacted the right side of the heart, went into the liver, and back to the chest again where it struck the lower right lobe of the lung. *Id*. at 151.

- 2 -

Based on a lack of stippling in the wound and the point of entry of the bullet, he opined that the shooter was more than two feet from the victim and facing him when the fatal shot was fired. *Id*. at 148-149, 157-158.

Raymond MacDonald, a senior manager of the law enforcement management group for T-Mobile, verified that phone calls made from the phone Appellant was carrying just prior to his arrest placed him in the vicinity of the murder when it occurred. N.T., 5/13/15, at 3-4, 35-36. Appellant offered an expert who offered the contrary opinion that the phone records placed Appellant anywhere from .84 to 2.75 miles from the scene at the time of the shooting. He also attempted to discredit the eyewitness testimony of Mr. Martin, who was in jail on a parole violation, with testimony of Mr. Martin's jail mates that Mr. Martin told them Appellant was not at the scene. *Id*. at 52-64.

On May 14, 2015, a jury returned a guilty verdict against Appellant on all counts. On July 17, 2015, Appellant was sentenced to life imprisonment on the first-degree murder conviction and twelve to twenty-four-months imprisonment for possessing an instrument of a crime, which was to run consecutive to the life sentence. The convictions for aggravated assault and recklessly endangering another person merged with the murder charge. The court imposed a twenty-four to forty-eight-month term of imprisonment to run concurrent to the life sentence on the firearms offense.

Appellant filed a timely post-sentence motion seeking modification of his sentence and judgment of acquittal based on the weight of the evidence. Specifically, with regard to the latter, Appellant relied upon the defense expert's testimony that, according to cell phone records, Appellant was not located near the scene of the shooting. In addition, Appellant maintained that the fact he sustained no residual injuries from the physical altercations that occurred that night constituted proof that he was not present at the scene. The motion was denied by the trial court and Appellant appealed on August 17, 2015. Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal and the trial court issued its opinion. Appellant raises two issues for our review:

1. Did the Honorable Court of Common Pleas commit an error of law when it denied [Appellant's] Post-Sentence Motion claiming insufficient evidence and a verdict against the weight of the evidence where [Appellant] was found guilty of first degree murder after a trial in which there was no evidence of malice or the specific intent to kill compounded by eyewitness testimony that before the shooting [Appellant] appeared drunk and that [Appellant] had been beaten with a tire iron twenty minutes before the shooting and other eyewitness testimony that the victim punched [Appellant] in the face twice just before the shooting?

2. Where an eyewitness testified that before the shooting [Appellant] appeared drunk and that [Appellant] had been beaten with a tire iron twenty minutes before the shooting and another eyewitness testified that the victim punched [Appellant] in the face twice just before the shooting, is it obvious from the record that [Appellant's] trial counsel was ineffective for failing to request a charge to the jury on diminished capacity or involuntary manslaughter and failing to address in his closing

argument diminished capacity, heat of passion or the possibility of a verdict of voluntary manslaughter?

Appellant's brief at 2.

Appellant's first issue is a challenge to both the sufficiency and the weight of the evidence. We will treat them as two separate issues. In determining whether there is sufficient evidence for the factfinder to find every element of the crime beyond a reasonable doubt, we view all the evidence admitted in a light most favorable to the verdict winner. **Commonwealth v. Slocum**, 86 A.3d 272, 275-276 (Pa.Super. 2014). The Commonwealth may sustain its burden of proof with purely circumstantial evidence. **Id**.

Appellant contends that the Commonwealth presented no evidence of malice or specific intent to kill that would support his first-degree murder conviction. He argues that Mr. Martin's testimony that Appellant retrieved a gun from his waistband and pulled the trigger "fell short of the Commonwealth's burden to prove malice and specific intent to kill[,]" as there was no evidence that Appellant pointed the gun at the victim. Appellant's brief at 11.

Under Pennsylvania law, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501(a). "A criminal homicide constitutes murder of the first degree when it is committed by an intentional

killing." 18 Pa.C.S. § 2502(a). An intentional killing is defined as a "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). For the Commonwealth to obtain a first-degree murder conviction, it must prove beyond a reasonable doubt that a human being was killed unlawfully, the defendant perpetrated the killing, and the defendant acted with malice and with a specific intent to kill. *Commonwealth v. Mattison*, 882 A.3d 386, 392 (Pa. 2013).

Appellant cites no authority in support of his contention that proof he intentionally aimed the firearm at the victim is required before one could draw an inference of his specific intent to kill. As this Court acknowledged in *Commonwealth v. Shank*, 883 A.2d 658 (Pa.Super. 2005), where an actor does not verbalize the reasons for his conduct, we look at the act itself to glean his intentions. Sometimes the intention is obvious from the act. A specific intent to kill may be inferred from the use of a deadly force upon a vital part of the human body. *See Commonwealth v. Cash*, 2016 Pa. LEXIS 1081, *1 (Pa. 2016) (malice inferred from gunshot to the back of the victim's head). Shooting the victim in the chest is sufficient to support an inference of malice. In addition, three witnesses testified that, prior to the shooting, there was an altercation involving Appellant and the victim. Mr. Martin observed Appellant pull a gun from his waistband and shoot the victim. Based upon our thorough review of the record, we conclude the

- 6 -

evidence viewed in the light most favorable to the Commonwealth, as verdict winner, provided ample proof that Appellant acted with the specific intent to kill when he shot Mr. Rieger.

Appellant's claim that the verdict is contrary to the weight of the evidence fares no better. He offers no argument, citation to authority, or support for his weight-of-the-evidence claim. This Court's role in reviewing such an issue is limited to "a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). As our High Court clarified in *Clay*, the appellate standard of review is distinct from that applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Clay*, *supra* at 1055 (citations omitted) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)). The Court explained the trial court's discretion is not unfettered. "Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice

or arbitrary actions." *Id*. Discretion is abused "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id*. The trial court concluded that, as the record clearly demonstrated, the verdict "did not shock one's sense of justice." Trial Court Opinion, 11/9/15, at 7. The trial court applied the proper standard and we find no abuse of discretion. This claim fails.

Finally, Appellant alleges that his trial counsel was ineffective in failing to present alibi, diminished capacity, or heat of passion defenses and in failing to seek a verdict of voluntary manslaughter. While conceding that such claims are generally reserved for collateral review under ***Commonwealth v. Grant***, 813 A.2d 726, 737-738 (Pa. 2002), Appellant relies upon ***Commonwealth v. Moser***, 921 A.2d 526, 530 (Pa.Super. 2007), for the proposition that we can reach his ineffectiveness claims under an exception for such claims "raised in a timely post-sentence motion, developed at a hearing devoted to the ineffectiveness claim, and ruled on by the trial court." Appellant asserts that this exception is applicable herein because he raised this claim in his post-sentence motion and trial counsel's ineffectiveness is obvious.

The exception to which Appellant alludes was carved out in ***Commonwealth v. Bomar***, 826 A.2d 831 (Pa. 2003), where claims of

ineffective assistance of counsel were raised and preserved in the trial court in post-sentence motions, a hearing was conducted, and the trial court addressed the ineffectiveness claims in its opinion. Preliminarily, we note that there was no evidentiary hearing on Appellant's ineffectiveness claims and the trial court did not address them.[1] Furthermore, the **Bomar** exception was abrogated in **Commonwealth v. Holmes**, 79 A.3d 562, 564 (Pa. 2013). Therein, our Supreme Court reposed "discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA." These circumstances are not present herein. Hence, any claims of ineffective assistance of counsel were properly deferred to collateral review.

Judgment of sentence affirmed.

_____

[1] In response to Appellant's claim that counsel's ineffectiveness was obvious, the trial court pointed to evidence in the record that counsel had difficulty subpoenaing witnesses. **See** N.T., 5/13/15, at 100-102, 181-183. The trial court also directed this Court's attention to that portion of the record where it instructed the jury on the alibi defense. **Id**. at 162.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2016