J-A34008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANNY R. CRUZ | |
| Appellant | No. 537 MDA 2015 |

Appeal from the Judgment of Sentence January 30, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005534-2013

BEFORE: PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J. **FILED FEBRUARY 05, 2016**

Appellant, Danny R. Cruz, appeals from the judgment of sentence entered on January 30, 2015, in the Court of Common Pleas of Dauphin County. We affirm.

We take the factual history of this case from the trial court's Rule 1925(a) opinion.

> On October 5, 2013, Carlos Dipres went with his friends Rafael Sanchez and Maritza David to a dance club, Anastacia's, on Sixth Street in Harrisburg to dance and listen to the band in which another friend was a DJ. [N.T., Trial, Oct. 20-22, 2015 at 56-58.] As Mr. Dipre[s] walked to the bar to order a drink, Orland[o] Ayuso-Rivera ("Ayuso-Rivera") accompanied by [Appellant], tapped him on the shoulder. [*See id*. at 59.]
>
> Mr. Dipres' acquaintance with Ayuso-Rivera dated back to 1997. In 1997, on two consecutive evenings, Mr. Dipre[s] loaned his car to his then brother-in-law and Ayuso-Rivera, who told Mr. Dipre[s] they needed the car to meet dates. [*See id*. at 60-61.] At the time, Mr. [Dipres] was moving his residence and left belongs, including a shotgun used for hunting, in the trunk of the

car. [*See id*.]  On the second night of their use of the car, Ayuso-Rivera and the brother-in-law did not return.  Mr. Dipres saw police officers and K-9 dogs surrounding the brother-in-law's home a few blocks away. [*See id*. at 61.]  Mr. Dipres approached the scene and told officers he was there to pick up his vehicle. [*See id*. at 62.] Officers arrested Mr. Dipres, believing that he participated in the robberies of fast food restaurants on the two previous nights in which the vehicle was used. [*See id*. at 62.]

Mr. Dipres told police that he was not present at the robberies. Mr. Dipres [instead] became a witness [after the] Commonwealth charged Ayuso-Rivera[] with the robberies.  Mr. Dipres testified against Ayuso-Rivera at trial following which a jury trial convicted Ayuso-Rivera. [*See id*. at 63-64; Commonwealth Exhibits 1 and 2.]

Mr. Dipres next saw Ayuso-Rivera in 2010 at a shopping plaza in Harrisburg. Ayuso-Rivera expressed anger towards Mr. Dipres, who sought to avoid further confrontation. [*See id*. at 65; 112-113.] Dipres saw Ayuso-Rivera again in 2013, three months before the incident at issue. [*See id*. at 66.]

Before, the incident, Dipres knew [Appellant] only by way of a few casual encounters in the community. [*See id*. at 122.]

On the night of this incident, October 5, 2013, accompanied by [Appellant], Ayuso-Rivera tapped Dipres on the shoulder and indicated he wanted to fight. [*See id*. at 60; 72; 95-96.]  Security told them to [take it outside]. [*See id*. at 67.] [Before Dipres followed Ayuso-Rivera outside, he] handed his cell phone and keys to his friend Rafael Sanchez [and instructed him to call the police.] [*See id*. at 67.]  Dipres told Sanchez that people were calling him "a rat" and "a snitch." [*Id*. at 159.]

Before leaving the club, Dipres did not see a gun. [*See id*. at 73.]  Dipres had a knife, but he did not take it out because he believed he was going to have a fistfight with Ayuso-Rivera. [*See id*. at 74-75; 107.] Mr. Dipres stepped outside into the parking lot.  [*See id*. at 67.]  A group of approximately ten men followed Ayuso-Rivera and [Appellant]. [*See id*. at 67; 98-99.]

Ayuso-Rivera and [Appellant] separated from the group and went to a car.  [Appellant] returned with a gun. [*See id*. at 71-72; 100-102.]

Having returned from the car with [Appellant], Ayuso-Rivera called Dipres "a rat" and "the snitch who wanted to ruin someone's life," stating, "yea, he's the snitch, he's the snitch." [*Id*. at 68; 77.] The group of men who surrounded Dipres began brutally beating him with bottles, a metal [object], and punches and kicks to the head. [*See id*. at 68-73.]

[Appellant] approached the crowd and fired one shot which caused the group to scatter. [*See id*. at 74-75.] [Appellant] then stepped back and shot Dipres four times at close range. [*See id*. at 76-77.] Dipres was conscious the entire time and saw [Appellant] shoot him. [*See id*. at 107.]

Rafael Sanchez testified that he went outside to the parking lot and saw the group punching and kicking Dipres. He began to intervene but stopped when he saw [Appellant] with the gun. [*See id*. at 162-163.]

Officer Christopher Silvio responded to the scene where he saw people frantically waving and pointing to Mr. Dipres. [*See id*. at 205; 207.] The officer observed that Mr. Dipres had been shot and was bleeding profusely. [*See id*. at 206.] Emergency personnel transported Mr. Dipres to the Hershey Medical Center. [*See id*. at 206.] Officer Silvio testified that in the ambulance, Mr. Dipres stated that the shooter approached him and said something to the effect of "you're a snitching bitch" or "I know you're the snitching bitch." [*Id*. at 211.]

Dipres suffered a broken nose, wounds to the head from pistol whipping, and gunshot wounds to the elbow, thigh and torso which required surgery…. [*See id*. at 84-89.]

Although he did [not] know [Appellant's] name at the time, Dipres identified him in a police photo array as the person who shot him. [*See id*. at 132; 143; 279.] Mr. Dipres stated that he could not remember [Appellant's] name but could never forget his face. [*See id*. at 139.] Rafael Sanchez also identified [Appellant] in a photo array and at trial as the shooter. [*See id*. at 164; 168; 169-170; 187; 254.]

The jury viewed video surveillance film taken at Anastacia's on the night of the incident. The film depicts [Appellant] in a private conversation with Ayuso-Rivera in the crowded club then the two approaching Mr. Dipres. [Appellant] stood close to Ayuso-Rivera as he spoke to Mr. Dipres shortly before the shooting.

Trial Court Opinion, 11/25/15 at 1-5.

A jury convicted Appellant of criminal attempt – murder of the first degree, aggravated assault, criminal conspiracy – aggravated assault, criminal conspiracy – firearms not to be carried without a license, possession of a firearm prohibited, and retaliation against witness or victim.[1] The trial court sentenced Appellant to an aggregate term of 10½ to 23 years' incarceration.[2] Appellant filed a post-sentence motion, which the trial court denied. This timely appeal followed.

Appellant raises the following issues for our review.

1. Whether there is legally insufficient evidence to support the jury's finding of guilt on count 3 and 5, Conspiracy, when the evidence showed that Appellant and Ayuso-Rivera had encountered Dipres by happenstance on the night in question and no agreement or other evidence of cooperation between them exists of record.

2. Whether there was legally insufficient evidence to support the jury's finding of guilt on count 6, Retaliation Against Witness or Victim, when there was no evidence to show that the Appellant knew about the witness's prior testimony.

3. Whether the court abused its discretion in not permitting new counsel, who was not present for the actual trial, to file a supplemental post-sentence motion where the Commonwealth agreed to the extension of time under these circumstances. As a result, [Appellant] was inappropriately constrained to put forth only boilerplate assertions in terms of

---

[1] 18 Pa.C.S.A. §§ 901; 2702(a)(1); 903(c); 6105(a)(1); and 4953(a), respectively.

[2] The trial court vacated the conviction of possession of a firearm prohibited prior to sentencing.

weight of the evidence against him and now where the Commonwealth will now likely argue waiver due to the lack of particularity averred in the original post-sentence motion.

4. Whether the jury's verdict is against the weight of the evidence on count 6, Retaliation Against Witness or Victim, when the evidence presented at trial to show that [Appellant] knew about the witness's prior testimony was nearly non-existent and certainly not beyond a reasonable doubt.

5. Whether the jury's verdict is against the weight of the evidence on count 1, Criminal Attempt – Murder of the First Degree, and count 2, Aggravated Assault, where the victim and eyewitness first identified Ayuso-Rivera, not the Appellant as the shooter. Whether the jury's verdict of guilt as to the Appellant as the principal in these events is nearly non-existent and certainly not beyond a reasonable doubt.

6. Whether the court abused its discretion in permitting the admission of exhibits that were not the Appellant's past crimes, not relevant, unfairly prejudicial to the Appellant, and misled the jury into believing that perhaps the Appellant may have been originally involved in the 1997 event.

Appellant's Brief at 7-9.

Appellant argues that the evidence was insufficient to support his conspiracy and retaliation against a witness convictions, and also that numerous convictions were against the weight of the evidence. We review a challenge to the sufficiency of the evidence as follows.

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of

- 5 -

fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Slocum*, 86 A.3d 272, 275-276 (Pa. Super. 2014) (citation omitted).

Conversely, a challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Orie*, 88 A.3d 983, 1015 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will

give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Id*. at 1015-1016 (citation omitted).

"When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009). Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. *See id*.

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or

- 7 -

aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Feliciano***, 67 A.3d 19, 25-26 (Pa. Super. 2013) (*en banc*) (citation omitted). "[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Commonwealth v. Knox***, 50 A.3d 749, 755 (Pa. Super. 2012) (citation omitted).

"A person commits [the offense of retaliation against victim, witness, or party] if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter." 18 Pa.C.S.A. 4953(a).

To the extent that Appellant challenges the trial court's tacit denial of his request to file supplemental post-sentence motions, we note Pa.R.Crim.P. 720(B)(1)(b) provides that a "defendant may file a supplemental post-sentence motion in the judge's discretion...." Pa.R.Crim.720(B)(1)(b).

Lastly, with respect to Appellant's challenge to the trial court's admission of the criminal docket sheets from the Commonwealth's 1997 criminal case against Ayuso-Rivera, we note that "the admission of evidence

is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 (Pa. Super. 2012) (internal citations omitted).

We have reviewed Appellant's issues raised on appeal, along with the briefs of the parties, the certified record and the applicable law. Having determined that the trial court's November 25, 2015 opinion ably and comprehensively disposes of the issues raised on appeal, with appropriate reference to the record and without legal error, we will affirm based on that opinion. **See** Trial Court Opinion, 11/25/15 at 6-12.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/5/2016

COMMONWEALTH

v.

DANNY R. CRUZ

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
:
: NO. 5534 CR 2013
:
:
:

## TRIAL COURT OPINION

Danny Cruz ("Defendant") appeals the judgment of sentence imposed on January 26, 2015, following the verdicts of guilty of Criminal Attempt (Murder), Aggravated Assault, Criminal Conspiracy to Aggravated Assault, Person Not to Possess a Firearm, Carrying Firearm Without a License and Retaliation Against a Victim.

For the reasons set forth, the judgment should be affirmed.

## FACTS

The facts, construed in the light most favorable to the Commonwealth as the verdict winner, are as follows:

On October 5, 2013, Carlos Dipres went with his friends Rafael Sanchez and Maritza David to a dance club, Anastacia's, on Sixth Street in Harrisburg to dance and listen to the band in which another friend was a DJ. (Transcript of Proceedings, Jury Trial, October 20-22, 2014, pp. 56-58)(hereinafter, " N.T."). As Mr. Dipre walked to the bar to order a drink, Orland Ayuso-Rivera ("Ayuso-Rivera") accompanied by Defendant, tapped him on the shoulder.

1

Mr. Dipres' acquaintance with Ayuso-Rivera dated back to 1997. In 1997, on two consecutive evenings, Mr. Dipre loaned his car to his then brother-in-law and Ayuso-Rivera, who told Mr. Dipre they needed the car to meet dates. (N.T. pp. 60-61). At the time, Mr. Dupre was moving his residence and left belongings, including a shotgun used for hunting, in the trunk of the car. (*Id.*). On the second night of their use of the car, Ayuso-Rivera and the brother-in-law did not return. Mr. Dipres saw police officers and K-9 dogs surrounding the brother in law's home a few blocks away. (N.T. pp. 61). Mr. Dipres approached the scene and told officers he was there to pick up his vehicle. (N.T. p. 62). Officers arrested Mr. Dipres , believing that he participated in robberies of fast food restaurants on the two previous night in which the vehicle was used. (N.T. pp. 62-63).

Mr. Dipres told police that he was not present at the robberies. Mr. Dipres became a witness. The Commonwealth charged Ayuso-Rivera, with the robberies. Mr. Dipres testified against Ayuso-Rivera at trial following which a jury convicted Ayuso-Rivera. (N.T. pp. 63-64; Commonwealth Exhibits 1,2).

Mr. Dipres next saw Ayuso-Rivera in 2010 at a shopping plaza in Harrisburg. Ayuso-Rivera expressed anger toward Mr. Dipres, who sought to avoid further confrontation. (N.T. p. 65; p. 112-113). Dipres saw Ayuso-Rivera again in 2013, three months before the incident at issue. (N.T. p. 66)

Before the incident, Dipres knew Defendant only by way of a few casual encounters in the community. (N.T. 122).

2

On the night of this incident, October 5, 2013, accompanied by Defendant, Ayuso-Rivera tapped Dipres on the shoulder and indicated he wanted to fight. (N.T. p. 60; p.72; pp. 95-96). Security told them to leave. (N.T. p. 68; pp. 98-99). Dipres handed his cell phone and keys to his friend Rafael Sanchez. (N.T. p. 159). Dipres told Sanchez that people were calling him "a rat" and "a snitch". (N.T. p. 159).

Before leaving the club, Dipres did not see a gun. (N.T. p. 73). Dipres had a knife, but did not take it out because he believed he was going to have a fistfight with Ayuso-Rivera. (N.T. pp. 74-75; p. 107). Mr. Dipres stepped outside to the parking lot. (N.T. p. 67). A group of approximately ten men followed Ayuso-Rivera and Defendant. (N.T. p. 67, N.T. pp. 98-99).

Ayuso-Rivera and Defendant separated from the group and went to a car. Defendant returned with a gun. (N.T. p. 70; p. 102).

Having returning from the car with Defendant, Ayuso-Rivera called Dipres "a rat" and "the snitch who wanted to ruin someone's life", stating, "yeah, he's the snitch, he's the snitch." (N.T. pp. 69-70; 79; 103). The group of men who surrounded Dipres began brutally beating him with bottles, a metal pipe, and punches and kicks to the head. (N.T. pp. 68-72).

Defendant approached the crowd and fired one shot which caused the group to scatter. (N.T. p.71; p.108). Defendant then stepped back and shot Dipres four times at close range. (N.T. pp. 77-78). Dipres was conscious the entire time and saw Defendant shoot him. (N.T. p. 107).

3

Rafael Sanchez testified that he went outside to the parking lot and he saw the group punching and kicking Dipres. He began to intervene but stopped when he saw Defendant with the gun. (N.T. pp. 164-165).

Officer Christopher Silvio responded to the scene where he saw people frantically waving and pointing to Mr. Dipres. (N.T. p. 205; p. 207). The officer observed that Mr. Dipres had been shot and was bleeding profusely. (*Id.*). Emergency personnel transported Mr. Dipres to the Hershey Medical Center. (N.T. p. 206). Officer Silvio testified that in the ambulance, Mr. Dipres stated that the shooter approached him and said something to the effect of "you're the snitching bitch" or "I know you're the snitching bitch." (N.T. p. 211).

Dipres suffered a broken nose, wounds to the head from pistol whipping, and gunshot wounds to the elbow, thigh and torso which required surgery and a permanent colostomy. (N.T. pp. 84-89).

Although he did know Defendant's name at the time, Dipres identified him in a police photo array as the person who shot him. (N.T. p. 132; p. 143; p. 279). Mr. Dipres stated that he could not remember Defendant's name but could never forget his face. (N.T. p. 139). Rafael Sanchez also identified Defendant in a photo array and at trial as the shooter. (N.T. p. 164; p.168; pp.169-170; p. 187; p. 254).

The jury viewed video surveillance film taken at Anastacia's on the night of the incident. The film depicts Defendant in a private conversation with Ayuso-Rivera in the crowded club then the two approaching Mr. Dipres. Defendant

4

stood close to Ayuso-Rivera as he spoke to Mr. Dipres shortly before the shooting.

## RELEVANT PROCEDURAL HISTORY

The jury returned verdicts of guilty of the above charges on October 22, 2014. On January 26, 2015, the court imposed sentence as follows:

Count 1- Criminal Attempt – Murder of the First Degree-
Not less than 9 nor more than 20 years incarceration in a state correctional institute, a fine of $150 and the costs of prosecution. Conditions of incarceration shall be that Defendant undergo any psychological treatment afforded. As a condition of parole, a curfew of 10 p.m.

Count 2 – Aggravated Assault-
Merged for purposes of sentencing.

Count 3- Conspiracy- Aggravated Assault-
Not less than 2 nor more than 4 years, a fine of $50 plus the costs of prosecution. This sentence shall run concurrently with Count No. 1.

Count 4- Vacated

Count 5- Conspiracy- Firearms Not To Be Carried Without License-
Not less than 2 nor more than 4 years incarceration in a state correctional institute, a fine of $50 and the costs of prosecution. This sentence shall run concurrently with the previous sentence.

Count 6- Retaliation Against Witness/Victim-

Not less than 1 ½ nor more than 3 years incarceration in a state correctional institute, a fine of $50 and the costs of prosecution. This sentence shall run consecutive to Count No. 1.
The Defendant shall receive time credit from October 11, 2013 to January 26, 2015.

(Transcript of Proceedings, Sentencing, January 26, 2015, pp. 6-7; Sentencing Order, January 26, 2015).

On February 5, 2015, Defendant filed a Post-Sentence Motion. On February 9, 2015, the Court ordered that the Commonwealth file a response thereto. On February 19, 2015, the Commonwealth filed an Answer to Defendant's Post-Sentence Motion. The transcripts of *voir dire*, the jury trial and sentencing were filed on February 10, 2015.

The Court denied Defendant's Post-Sentence Motion on February 23, 2015. Defendant filed a Notice of Appeal on March 23, 2015. On April 17, 2015, the Court ordered that Defendant file a Concise Statement of Matters Complained of on Appeal. Defendant filed a timely Concise Statement on May 8, 2015.

**DISCUSSION**[1]

1. The Court properly exercised its discretion in deciding Defendant's Post-Sentence Motion without supplemental pleading. (Defendant's Claim of Error 5.1)

Pennsylvania Rule of Criminal Procedure 720 imposes timeliness requirements as to the filing of Post Sentence Motions and provides for the discretion of the trial in granting or denying a request for extension, without reference to the availability of trial transcripts. The Rule provides:

> (b) The defendant may file a supplemental post-sentence motion in the judge's discretion as long as the decision on the supplemental motion can be made in compliance with the time limits of paragraph (B)(3).

Pa.R.Crim.P. 720(B)(1)(b).

---

[1] We note that Paragraphs 1-4 of Defendant's Concise Statement of Matters Complained of on Appeal present general argument as to the standards applicable to review of a 1925 (b) Statement. We do not address those but rather, address only identifiable claims of error on appeal which Defendant has briefed on appeal.

The Court properly exercised it discretion under Rule 720 (B)(1)(b). Based upon its familiarity with the compelling evidence presented at trial, the Court did not require supplemental pleadings from the defense to rule upon Defendant's Post-Sentence Motion.

Further, the Court's consideration of Defendant's Post-Sentence Motion without supplement thereto did not prejudice Defendant. The trial transcript was lodged on February 10, 2015, and was therefore available to defense counsel well in advance of the filing of his Concise Statement of Matters Complained of on Appeal on May 8, 2015.

2. No basis for appeal exists based upon the Trial Court's admission of relevant evidence of the criminal history of Ayuso-Rivera where counsel stipulated to its admissibility. (Defendant's Claim of Error 5.2)

At the commencement of trial, counsel presented argument as to the admissibility of the 1997 criminal docket of *Commonwealth v. Ayuso Rivera* in which the Commonwealth charged Ayuso- Rivera with robbery. The Court reserved ruling upon that request to admit evidence. (N.T. pp. 10-11).

The Commonwealth renewed its request for the admission of the docket of the 1997 case as Exhibits 1 and 2 during the testimony of Mr. Dipres regarding the past relationship with Ayuso-Rivera,. Defense counsel stipulated to the admissibility of the dockets. (N.T. pp. 63-64). Accordingly, the Court deemed the dockets admitted as stipulated evidence.

Therefore, Defendant waived objection or claim on appeal related to the admission of the criminal dockets.

7

3. The Commonwealth presented sufficient evidence that Defendant, through collaboration with Ayuzo-Rivera, knew of the victim's role as a witness in a 1997 robbery trial and retaliated against him for that reason. (Defendant's Claim of Error 5.3)

Ample evidence supports the jury's conclusion that Defendant acted with knowledge of Mr. Dipres' role in the 1997 trial against Ayuso-Rivera and retaliated against him for that reason.

The standard of review of a claim of lack of sufficient evidence is well settled, namely,

> ... whether the evidence at trial, and all reasonable inferences derived therefrom when viewed in the light most favorable to the Commonwealth as the verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. [The Appellate Court] may not weigh the evidence or substitute [its] judgment for that of the fact-finder. Additionally, the evidence at trial need preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence.

*Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa. Super. 2006).

The Crimes Code provides:

Retaliation against witness, victim or party-

> (a) Offense defined.- A person commits an offense if he harms another by an unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S.A. §4953.

8

The thrust of Defendant's challenge to the sufficiency of evidence relates to whether Defendant knew of the victim's role as a witness in the 1997 trial against Ayuso- Rivera.

Ample evidence existed upon which the jury could easily conclude that Defendant conferred with Ayuso- Rivera and knew of Mr. Dipres's role as a witness against Ayuso-Rivera. The jury heard testimony that prior to the attack, Ayuso-Rivera yelled to Defendant and others, referring to Dipres, "*he's the snitch*". (N.T. p. 69).

In addition, the jury viewed the video surveillance tape which depicted Defendant and Ayuso-Rivera in a private conversation shortly before they approached Mr. Dipres in the club. The jury could easily conclude that Defendant spoke to Ayuso-Rivera about Dipres' prior role as a witness which encouraged Defendant to retaliate for the perceived benefit of his companion Ayuso-Rivera. Mr. Dipres testified that in the club, before the beating and shooting, Defendant stood close to Ayuso-Rivera as Ayuso-Rivera raised the issue of Mr. Dipres' testimony against him.

4. The weight of the evidence supports the verdict on the crime of retaliation.(Defendant's Claim of Error 5.4)

The Trial Court properly exercised its discretion in denying Defendant's Post- Sentence Motion where the weight of the evidence supported the verdict.

It is well established that:

> A true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' but questions which evidence is to be believed. An appellate court may review the trial court's decision to

determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Indeed, an appellate court should not entertain challenges to the weight of the evidence since [the appellate court's] examination is confined to the "cold record" [and] may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Galindes*, 786 A.2d 1004, 1011 (2001)(internal citations omitted).

In reviewing the trial court's denial of a motion for a new trial based upon a challenge to the weight of evidence, the appellate court will give "the gravest consideration to the findings and reasons advanced by the trial judge." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)(internal citations omitted).

The facts we discussed above which demonstrate the sufficiency of evidence similarly demonstrate that the weight of the evidence supports the jury's findings. As cited, Defendant was present with Ayuso-Rivera during the events leading up to the beating and shooting during which Ayuso-Rivera yelled "he's the snitch".

5. The weight of evidence supports the verdicts where the jury made findings of fact and credibility determinations as to evidence which identified Defendant as the person who committed the crimes. (Defendant's Claim of Error 5.5)

The Trial Court properly exercised its discretion in denying Defendant's Post-Sentence Motion based upon the weight of evidence claim where ample

10

evidence supported the conclusion that Defendant committed the instant crimes.

It is beyond purview that credibility determinations and findings of fact are matters for the jury. The jury was free to accept as fact that Mr. Dipres and Rafael Sanchez unequivocally identified Defendant in the police photo array as the person who shot Mr. Dipres.

6. Sufficient evidence supports the verdicts as to the crimes of conspiracy. (Defendant's Claim of Error 5.7)

The Commonwealth presented sufficient circumstantial evidence upon which the jury could conclude that Defendant conspired with Ayuso-Rivera to retaliate against and shoot the victim.

Pursuant to 18 Pa.C.S.A. § 903, a person is guilty of conspiracy if he:

... with another person or persons to commit a crime if with

the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903

As with any crime, the Commonwealth may sustain its burden of proving the existence of a conspiracy by circumstantial evidence. The Commonwealth

11

correctly notes that it need not prove that the conspirators reached an explicit or formal agreement to commit a crime. A conspiracy may be inferred by the conduct of the parties and surrounding circumstances. *citing Commonwealth v. Johnson*, 719 A.2d 778 (Pa. Super.1998)(en banc)(quoting *Commonwealth v. Kennedy*, 453 A.2d 927 (1982).

The jury could readily conclude that Defendant's presence with Ayuso-Rivera that evening as events escalated proved a conspiracy. Mr. Dipres testified that he had never had a negative encounter with Defendant before this incident and therefore the jury heard no evidence of an alternative motive. Before the shooting, Ayuso-Rivera, accompanied by Defendant, approached Mr. Dipres at the bar. When it became apparent that a fight would occur, the Mr. Dipres went outside the bar expecting to fight Ayuso-Rivera. Mr. Dipres saw Defendant and Ayuso-Rivera go to a car. (N.T. pp. 66-72). Defendant took a gun out of a bag as he approached Mr. Dipres. As Defendant was being beaten by the group, Ayuso-Rivera called him a rat and snitch.

The jury was free to conclude that Defendant conspired to commit the crimes by his conversation with Ayuso-Rivera at the club, their retrieval of the gun from the car together and the view of Mr. Dipres as a "snitch".

7. The weight of evidence supports the verdicts as to the crimes of conspiracy. (Defendant's Claim of Error 5.8)

For all of the same reasons set forth at Section 6 above, the Trial Court properly denied Defendant's challenge to the weight of evidence as to conspiracy to commit the within crimes.

CONCLUSION

For all of the foregoing reasons, the judgment of sentence should be affirmed.

BY THE COURT:

_____
JOHN F. CHERRY, JUDGE

November 25, 2015

**Distribution:**

**Dauphin County District Attorney's Office**

**Theodore Tanski, Esq., 3601 Vartan Way, 2nd Floor, Harrisburg, PA 17110**

13

CONCLUSION

For all of the foregoing reasons, the judgment of sentence should be affirmed.

BY THE COURT:

_____
JOHN F. CHERRY, JUDGE

November 25, 2015

**Distribution:**

**Dauphin County District Attorney's Office** ✗

**Theodore Tanski, Esq., 3601 Vartan Way, 2nd Floor, Harrisburg, PA 17110** MAJ✓

Supreme Court Cert. Mae