J-S26022-22, J-S26023-22, J-S26024-22, J-S26025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY RAMOS | : | |
| | : | |
| Appellant | : | No. 1594 MDA 2021 |

Appeal from the PCRA Order Entered November 15, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002008-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY RAMOS | : | |
| | : | |
| Appellant | : | No. 1595 MDA 2021 |

Appeal from the PCRA Order Entered November 15, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002007-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY RAMOS | : | |
| | : | |
| Appellant | : | No. 1596 MDA 2021 |

J-S26022-22, J-S26023-22, J-S26024-22, J-S26025-22

Appeal from the PCRA Order Entered November 15, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0002006-2010

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GREGORY RAMOS :
:
Appellant : No. 1597 MDA 2021

Appeal from the PCRA Order Entered November 15, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0002005-2010

BEFORE:    KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: FEBRUARY 3, 2023**

Gregory Ramos (Appellant) appeals from the order entered in the Franklin County Court of Common Pleas, denying his fourth Post Conviction Relief Act[1] (PCRA) petition after a hearing.[2]  In 2011, Appellant was found guilty by a jury of two counts each of promoting prostitution, corruption of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9545.

[2] The Commonwealth has filed a letter, stating it will not submit an appellee's brief.

- 2 -

minors, and sexual exploitation of children.[3] Appellant now relies on a recent recantation by his nephew, denying that Appellant was involved in the scheme to force two minor girls into prostitution. The PCRA court determined Appellant properly invoked the newly discovered evidence timeliness exception, but the evidence did not warrant a new trial pursuant to the after-discovered evidence basis for relief.[4] On appeal, Appellant avers the PCRA court erred in finding the nephew's statement would not have compelled a different result. We affirm.

## I. Facts & Prior Procedural History

Appellant was charged, across four dockets,[5] of multiple offenses related to his role in forcing two minor girls, J.D. and R.M., into prostitution over a several days-period in 2008. Appellant's present PCRA petition relies on a recent statement given by his nephew, Ruben Bautista (Nephew), who was 16 years old at the time of the underlying incidents.

---

[3] 18 Pa.C.S. §§ 5902(b)(3), 6301(a)(1), 6320(a).

[4] *See* 42 Pa.C.S. §§ 9543(a)(2)(vi), 9545(b)(1)(ii).

[5] The instant PCRA order, denying relief, listed all four dockets. Appellant has filed four separate notices of appeal in compliance with *Walker*. *See Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018) ("[W]here a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case."), *overruled in part*, *Commonwealth v. Young*, 265 A.3d 462, 477 (Pa. Dec. 22, 2021) (reaffirming Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues at more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed).

Previously, the PCRA court summarized the evidence presented at trial:[6]

> The Commonwealth first presented J.D., who was [19] years old at the time [of trial]. J.D. stated that during the summer of 2008, when she was [15] years old, she was living in a residential treatment facility . . . in Chambersburg, [Franklin County]. J.D. ran away from this facility on July 27, 2008 with R.M., another resident[, then 17 years old.] After meeting and staying with a number of people, J.D. met a [16 or 17] year old boy[, Nephew,] who took her to [Appellant's home] in Chambersburg[.]

Trial Ct. Op., 5/22/12, at 1-2, 4 (unpaginated). Appellant's girlfriend, Candy Hubbard, also lived at that home.

The PCRA court summarized J.D.'s testimony as follows:

> J.D. spent less than a week with [Appellant] and [Hubbard.[7]] During that time, J.D. and R.M. were given alcohol, marijuana, and prescription pills by [Appellant] and Hubbard. [J.D.] told [Appellant] and Hubbard that she was [15] years old when she met them and . . . they believed she had run away from a group home.

> After a few days[,] Hubbard approached [J.D.] about compensation for J.D. and R.M. to stay [there.] Hubbard suggested that [J.D.] prostitute herself in order to obtain money to stay at [Appellant's] house. [T]he two girls agreed to prostitute themselves. They then had a conversation with Hubbard and [Nephew] about setting prices for certain sexual acts.

> One morning while at the laundromat, Hubbard told J.D. and R.M. that they would walk around and find people to perform sexual acts with them. [Appellant] met them at the laundromat and all four . . . walked around Chambersburg. Although [Appellant] was speaking Spanish, J.D. was able to decipher

---

[6] The Honorable Shawn Meyers presided over both the trial and present PCRA proceedings.

[7] For ease of discussion, we have shortened the trial court's references to "Ms. Hubbard" to simply "Hubbard."

certain words due to her knowledge of Spanish and . . . the fact that [Appellant] used English at times. J.D. was able to determine that [Appellant] was listing prices.

Afterwards, J.D. and R.M. went to a home where J.D. had vaginal sex with a stranger while [Appellant] waited downstairs. J.D. had vaginal intercourse with five men that day. . . . J.D. prostituted the next day, having intercourse with seven men, and gave that money to Hubbard. On the third day of sexual activities, J.D. had intercourse with nine men. On one occasion, J.D. was physically hurt by one of the [men. N]one of the men she had sex with spoke English. After performing sexual acts for compensation, J.D. [gave] the money to [Appellant,] Hubbard, or [Nephew].

Trial Ct. Op., 5/22/12, at 2-3 (footnotes omitted & paragraph breaks added).

On August 4, 2008, a police officer arrived at the home and placed J.D. in handcuffs. She was interviewed by Chambersburg Police Detective Scott Mummert that day, and she stated "she was on drugs at the time." Trial Ct. Op., 5/22/12, at 3. J.D. was interviewed again by Detective Mummert approximately eight weeks later. In both interviews, J.D. "told Detective Mummert about Hubbard and [Nephew] but did not tell him about [Appellant], stating that she was not ready to explain everything . . . at that time." *Id.* J.D. then "ran away from multiple facilities and returned to" Appellant's house. *Id.* Eventually, she went to another facility, where she stayed until she was discharged at age 18.

The Commonwealth also called Hubbard to testify. She stated:

[Hubbard] met [Appellant] during the summer of 2008 at a bar. [T]hey were having sexual relations . . . and she quickly moved into his residence[. Hubbard] lived there for one and a half to two months with [Appellant], his nephew, . . . and another man.

[Also, p]eople were in and out so often that she did not know who lived there and who did not.

When [J.D. and R.M.] came to their house, [Hubbard] told the girls that they could not live in the house for free, they had to make money somehow. She knew that they could not get a job because they were runaways[;] therefore . . . she suggested that they prostitute. . . . Hubbard acknowledged that she and [Appellant] knew that J.D. and R.M. were runaways and knew how old they were.

Hubbard stated [Appellant] knew she had told the two girls that they had to prostitute[. H]e helped set up the clientele because he was the only one that knew Spanish. [Appellant, Nephew,] and another man named Lazy would solicit men to pay for sexual services with J.D. or R.M. Hubbard would then collect the money.

Hubbard stated that [Appellant] was also responsible for being a bodyguard for the two girls while they were prostituting. If they called out a certain word, he was supposed to intervene and stop whatever was happening. Hubbard also served as a bodyguard at certain times and observed both girls performing sexual acts. Finally, Hubbard . . . provided the girls with alcohol, marijuana, narcotics, and cocaine.

Trial Ct. Op., 5/22/12, at 3-4 (paragraph breaks added).

Relevant to Appellant's arguments on appeal, we note J.D.'s initial statements to police did not implicate Appellant. On September 27, 2008 — eight weeks after J.D.'s first police interview — Detective Mummert charged Appellant and Hubbard with two counts each of exploitation of children, promoting prostitution, and corruption of minors. However, the detective "withdrew the charges against [Appellant] because J.D. and R.M. had run away and [he] was concerned about" proving the charges at the preliminary

hearing. The detective thus filed a misdemeanor charge for corruption of minors. Trial Ct. Op., 5/22/12, at 5.

The trial court summarized:

> After speaking with J.D. at Hubbard's preliminary hearing, [however,] Detective Mummert decided to re-file the . . . withdrawn charges against [Appellant]. The detective's decision was based upon a marked difference in J.D. since last meeting with her. [A]t the first interview, [J.D.] was under the influence of drugs and was disdainful of authority.
>
> Detective Mummert also interviewed Hubbard and [Nephew]. . . .
>
> In May 2010, Detective Mummert was notified that [Appellant] was found in Delaware. . . .
>
> After another detective interviewed J.D., the felony charges against [Appellant] were again withdrawn because J.D. did not implicate [Appellant] in forcing her to prostitute herself. . . . J.D. stated [Appellant] "participated in assisting the girls and looking out for them, but became angry with Hubbard for forcing the girls to continue with it." [Also, Appellant] would talk to the girls and try to comfort them but . . . Hubbard was present or close by during most of the sexual encounters. After speaking with J.D. on November 4, 2008, Detective Mummert decided that there was enough evidence to [pursue] the felony charges.

Trial Ct. Op., 5/22/12, at 5-6 (paragraph breaks added).

At this juncture, we note that with respect to **Hubbard's** charges, she pleaded guilty to one count of promoting prostitution and received a maximum sentence of seven years. N.T. Jury Trial, 10/20/11, at 67-68. At trial, Hubbard denied she was promised any leniency in exchange for her testimony against Appellant. *Id.* at 54-55, 64.

Finally, we note the Commonwealth also called Detective Mummert to testify at trial. Because Nephew was a juvenile at the time of the underlying incidents, he was not charged as a co-defendant with Appellant and was not required to stand trial with him. PCRA Ct. Op., 11/15/21, at 1. Nephew was separately charged and was adjudicated.[8] N.T. PCRA H'rg, 7/16/21, at 22.

On October 20, 2011, the jury found Appellant guilty of two counts each of promoting prostitution, corruption of minors, and sexual exploitation of children. On January 18, 2012, the trial court imposed an aggregate sentence of 22 to 44 years' imprisonment.

Appellant took a direct appeal, and this Court affirmed the judgment of sentence. **Commonwealth v. Ramos**, 1115 MDA 2012 (unpub. memo.) (Pa. Super. Apr. 4, 2013), *appeal denied*, 326 MAL 2013 (Pa. Oct. 9, 2013). On October 9, 2013, our Supreme Court denied his petition for allowance of appeal.

Appellant then filed a timely PCRA petition on March 7, 2014, presenting several claims of trial and appellate counsel's ineffective assistance. The PCRA court denied relief, and on appeal, this Court affirmed on July 1, 2016. **Commonwealth v. Ramos**, 1384 MDA 2015 (unpub. memo.) (Pa. Super. July 1, 2016). Appellant filed two additional PCRA petitions, both of which

---

[8] No further explanation about Nephew's adjudication was given. **See** N.T., 7/16/21, at 22.

were dismissed. Neither of his two ensuing appeals were completed. *See* *Commonwealth v. Ramos*, 1154 MDA 2018 (Pa. Super. Oct. 16, 2018) (Appellant discontinued appeal from dismissal of his second PCRA petition); *Commonwealth v. Ramos*, 820 MDA 2019 (this Court dismissed appeal, from dismissal of third PCRA petition, for failure to file a docketing statement) (Pa. Super. Aug. 5, 2019).

## II. May 8, 2020, PCRA Petition & Hearing

On May 8, 2020, represented by present, privately retained counsel, Appellant filed the underlying PCRA petition — his fourth. He cited newly discovered evidence in the form of a recantation by his nephew. Appellant attached a letter, written by Nephew and addressed to Appellant's counsel, which stated the following: (1) when the police interviewed Nephew, he lied and told them Appellant and Hubbard forced the girls to prostitute, but (2) in truth, Appellant was only aware — based on what Nephew told him — that the two girls were his friends.

The PCRA court conducted an evidentiary hearing on July 16, 2021, at which the sole witness was Nephew.[9] Nephew testified to the following: in his

---

[9] The trial court raised a Fifth Amendment concern that Nephew might make incriminating statements, and thus at the hearing, appointed counsel to represent Nephew. N.T., 7/16/21, at 5, 10. *See Commonwealth v. Padillas*, 997 A.2d 356, 362 (Pa. Super. 2010) ("The Fifth Amendment protects a witness from compelled self-incrimination and renders that testimony unavailable.").

police interview, the officers told him they knew about him "soliciting" J.D. and R.M. N.T., 7/16/21, at 19. Nevertheless, when Nephew admitted, "I did it," the officers did not believe a 16 year-old boy could "do this." *Id.* at 19-20. When the officers asked who else was involved, Nephew felt scared and "coerced," wanted "to blame it on somebody" else, and thus stated Appellant and Hubbard "were the ring leaders[.]" *Id.* at 22, 24, 25. However, Appellant did not know anything about the prostitution scheme. *Id.* at 29. At the PCRA hearing, Nephew admitted he had "walk[ed] around" to seek men for the prostitution scheme, but denied Appellant ever did this with him, nor took money or "[stood] guard outside a bedroom door." *Id.* at 21, 24. Instead, Appellant was at work. *Id.* at 22. Nephew was not working or going to school, and he used the money to pay his share of the rent. *Id.* at 30-31. However, Appellant did not ask him how he got the money. *Id.* at 31.

Nephew now wanted "to set the record straight," even if he could be prosecuted for giving a false statement. N.T., 7/16/21, at 24. Nephew also acknowledged his criminal history of *crimen falsi* offenses: a 2016 Delaware conviction for "impersonat[ing] another to obtain a benefit or a fraud;" a larceny in Delaware; a 2018 false identification to law enforcement; retail theft and receiving stolen property; four thefts committed in 2018; a October 2018 attempted burglary, for breaking into his mother's home and taking money; another burglary; two fraud charges in 2019; and an escape after conviction charge, for leaving "the Plumbers Center." *Id.* at 31-34. Nephew explained

he had a serious drug issue, but he has been in recovery for two years. *Id.*
at 33-34. Nephew had been incarcerated for six months when his mother —
Appellant's sister — asked him to write a letter on Appellant's behalf. *Id.* at
23, 33-34. However, when asked how often he spoke with Appellant, Nephew
replied, "Not at all." *Id.* at 25-26. Finally, Nephew stated he was willing to
testify at trial to the statements he just gave. *Id.* at 36.

On November 15, 2021, the PCRA court entered the underlying order
denying relief. It found Appellant established newly discovered evidence
sufficiently invoking the PCRA timeliness exception at Subsection
9545(b)(1)(ii). However, the court concluded the new evidence would not
have compelled a different verdict, and thus denied relief under Subsection
9543(a)(2)(vi), the after-discovered evidence provision.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b)
statement of errors complained of on appeal.[10]

---

[10] The PCRA court's order was issued on December 9, 2021, and directed
Appellant to file a Rule 1925(b) statement within 21 days, or by Thursday,
December 30th. Appellant's counsel, however, did not file the statement until
January 3, 2022. Usually, the untimely filing of a court-ordered Rule 1925(b)
statement would usually result in waiver of all issues. *Commonwealth v.
Burton*, 973 A.2d 428, 430 (Pa. Super. 2009). However, a criminal defense
attorney's filing of an untimely statement is *per se* ineffectiveness, for which
an appellant is entitled to prompt relief. *Id.* at 433. Here, "[A]ppellant's
counsel has filed a Rule 1925 concise statement setting forth the alleged error,
and the [PCRA] court has filed an opinion addressing [that] issue[.]" *See id.*
at 433. Thus, remand is not necessary, and we will consider the merits of the
issue presented on appeal. *See id.*

### III. Statement of Question Involved

Appellant presents one issue for our review:

Did the PCRA Court err by denying [Appellant's] request for PCRA relief in the form of a new trial by concluding that the newly and after discovered evidence would not have compelled a different outcome at trial?

Appellant's Brief at 4.

### IV. Standard of Review & Relevant PCRA Provisions

ccc

"The PCRA's time restrictions are jurisdictional in nature, and a court may not entertain untimely PCRA petitions." **Commonwealth v. Burton**, 158 A.3d 618, 627 (Pa. 2017). It is not disputed that Appellant's May 8, 2020, PCRA petition was filed more than one year beyond the PCRA's general one-year filing period.[11] He invoked relief under the Subsection 9545(b)(1)(ii)

---

[11] On direct appeal, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on October 9, 2013. Appellant then had 90 days, or until January 7, 2014, to seek *certiorari* with the United States Supreme Court. **See** Sup. Ct. R. 13. When he did not, his judgment of sentence became final for PCRA purposes on that day. **See** 42 Pa.C.S. § 9545(b)(3) (judgment becomes final at the conclusion of direct review, including discretionary review in the United States Supreme Court, or at the expiration of time for seeking the review). Appellant then generally had one year, or until January 7, 2015, to file a PCRA petition. **See** 42 Pa.C.S. § 9545(b)(1) (generally, PCRA petition shall be filed within one year of the date the judgment becomes final).

"newly-discovered evidence" exception.[12]  That exception requires a petitioner

to allege and prove:

> the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

42 Pa.C.S. § 9545(b)(1)(ii).

> Our Supreme Court has explained:

> "Once jurisdiction has been properly invoked (by establishing either that the petition was filed within one year of the date judgment became final **or** by establishing one of the three exceptions to the PCRA's time-bar), the relevant inquiry becomes whether the claim is cognizable under [Subsection 9543(a)(2)(vii)] of the PCRA."

**Burton**, 158 A.3d at 629 (emphasis added & citation omitted).  Subsection

9543(a)(2)(vi), in turn, provides relief to a petitioner who:

> plead[s] and prove[s] by a preponderance of the evidence[:]

>> (2) That the conviction or sentence resulted from[:]

>> \* \* \*

>> (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

42 Pa.C.S. § 9543(a)(2)(vi).

---

[12] **See Burton**, 158 A.3d at 628-29 (for clarity and consistency, courts are encouraged to utilize the phrase "newly-discovered facts" when referring to the timeliness exception at Subsection 9545(b)(1)(ii), which is distinct from "the after-discovered evidence eligibility-for-relief provision set forth in [S]ubsection 9543(a)(2)").

Our Supreme Court has stated:

> [T]o prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. . . .

***Burton***, 158 A.3d at 629. This "test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." ***Padillas***, 997 A.2d at 363.

With respect to the third factor — that a petitioner "must demonstrate he will not use the alleged after-discovered evidence solely to impeach the credibility of a witness" — we note, "Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness, it constitutes impeachment . . . ." ***Padillas***, 997 A.2d at 365 (citation omitted).

> [B]efore granting a new trial, a court must assess whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted. In making that determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction.

***Id.*** (citations omitted).

Here, Nephew's statements, in support of Appellant's PCRA petition, were against Nephew's own interests. This Court has stated:

> A statement against penal interest is often considered trustworthy if it subjects the declarant to criminal liability and a reasonable

- 14 -

person would not make the claim unless it was true. Before crediting as reliable a statement against penal interest, the court must consider the declarant's motive for making the statement and whether the surrounding circumstances indicate the statement is trustworthy. For example, a defendant's relative or close friend's confession should be closely scrutinized for motive to fabricate the confession.

***Padillas***, 997 A.2d at 365-66 (citations omitted).

## V. PCRA Court's Opinion

For ease of review, we first set forth the PCRA court's reasoning. First, the court found that in relying on Nephew's letter, Appellant properly invoked the newly discovered evidence exception, and thus his petition was timely. ***See*** 42 Pa.C.S. § 9545(b)(1)(ii); PCRA Ct. Op., 11/15/21, at 2 (unpaginated).

The PCRA court then reviewed each of the factors under the after-discovered evidence test, and concluded Appellant was not entitled to a new trial. ***See Burton***, 158 A.3d at 629. It found in favor of Appellant as to whether the evidence: could not have been obtained through reasonable diligence, was cumulative, and would not be used solely for impeachment purposes. PCRA Ct. Op., 11/15/21, at 2-3.

However, the PCRA court found the new evidence would **not** have compelled a different verdict. PCRA Ct. Op. ,11/15/21, at 3. First, the court considered the Webster's and Black's Law dictionaries definitions of "compel" to mean, generally, "to force." ***Id.*** The court then considered the "damning statement[s] made by" Hubbard and J.D. at trial: "Their testimony alone provided sufficient evidence to support a finding of guilty by the jury.

- 15 -

[Appellant] was not some mere bystander as claimed by" Nephew. *Id.* The jury determined these witnesses' testimony was credible, and found beyond a reasonable doubt that Appellant committed the alleged acts. *Id.*

Furthermore, the PCRA court found Nephew was not credible. PCRA Ct. Op., 11/15/21, at 3-4. It cited Nephew's letter, which stated, "I know I did something wrong **and I will do anything to make it right**." *Id.* at 3. The court found Nephew "is trying to undo the credible testimony of a teenage prostitution victim and [Hubbard, Apppellant's] co-conspirator[,] by potentially committing perjury." *Id.* at 3-4. Concluding Appellant had not established the last prong, the trial court denied relief. We now review Appellant's arguments on appeal.

## VI. Appellant's Arguments

Appellant asserts the PCRA court erred in finding Nephew's testimony would not have caused a different result. He contends that in "overemphasiz[ing]" the word "compel," the court "overlooked the key word [preceding] it, 'likely.'" Appellant's Brief at 15-16. The proper inquiry was thus whether Nephew's testimony would have **likely** compelled a different result. However, Appellant maintains, "[t]he PCRA court's approach" required him, erroneously, to prove "his case to a certainty" and convince the court of his innocence. *Id.* at 16.

Next, Appellant avers he has met his burden. He points out "the Commonwealth relied on only two witnesses" to present their case against

him.  Appellant's Brief at 16.  Of these two witnesses, Appellant maintains, Hubbard agreed to testify following her own plea deal with "an absurdly lenient sentence," and she was thus "clearly incentivized to testify for the Commonwealth."  *Id.* at 16, 18.  The other witness, J.D., gave "suspect" testimony "by virtue of several inconsistencies," including the fact she "did not mention [Appellant] in her two initial interviews with police."  *Id.* at 17, 18.  On the other hand, Appellant maintains, Nephew's testimony absolved Appellant.  *Id.* at 16.

To this end, Appellant further alleges Nephew's "testimony should have been deemed credible enough to result in a new trial."  Appellant's Brief at 17.  Appellant recounts that even the PCRA court was concerned Nephew would implicate himself in a crime and thus appointed counsel to advise Nephew.  *Id.*  Additionally, Nephew "candidly acknowledged [he was] not concerned about being charged with perjuring himself[;]"Appellant claims "[t]his kind of testimony bears significant indicia of reliability."  *Id.*  Appellant concludes this Court should reverse the PCRA court's denial of relief and remand for a new trial.  We conclude no relief is due.

**VII. Analysis**

Preliminarily, we do not disturb the PCRA court's finding that Appellant sufficiently invoked the newly discovered evidence timeliness exception. The court determined Appellant established the two necessary prongs: that the facts — Nephew's new statement — were unknown to him and could not have been ascertained by the exercise of due diligence. *See* 42 Pa.C.S. § 9545(b)(1)(ii); *Flor*, 259 A.3d at 910.

While the PCRA court's discussion did not, as Appellant points out, include the complete phrase, whether the new evidence "would **likely** compel a different verdict," we conclude the court's rationale supports a finding that it would not. *See Burton*, 158 A.3d at 629; Appellant's Brief at 15-16. We first consider Appellant's claims that Nephew's new statement would undermine the testimony of the Commonwealth's two witnesses, and "absolve[ ]" Appellant. *See* Appellant's Brief at 16. We reiterate that Hubbard denied she was promised leniency in her own criminal case in exchange for testifying against Appellant. *See* N.T., 10/20/11, at 54-55, 64. Furthermore, although J.D.'s initial statements to police implicated Appellant to varying degrees, her trial testimony was clear: Appellant walked around with her and R.M. and solicited men for sexual acts with the victims, he waited downstairs while J.D. had sex with a stranger, he collected the money, several times, from the sexual acts from J.D., and he provided J.D. with alcohol, marijuana, and pills. *See* N.T., 10/20/21, at 17-18, 21, 23, 47. This testimony was

corroborated by Hubbard, who largely testified to the same. The jury was free to weigh their testimony and believe all, part, or none of it. *See Commonwealth v. Slocum*, 86 A.3d 272, 275 (Pa. Super. 2014). As the PCRA court points out, the jury determined their testimony was credible and found beyond a reasonable doubt that Appellant committed the alleged acts. *See* PCRA Ct. Op., 11/15/21, at 3.

Furthermore, while Appellant emphasizes that Nephew's testimony bore "significant indicia of reliability," because he exposed himself to charges of "perjur[y],"[13] Appellant ignores Nephew's extensive history of *crimen falsi* offenses. *See* Appellant's Brief at 17. The PCRA court was free to weigh Nephew's testimony, and it concluded "[h]is statements simply aren't credible. His interest, motive, and bias are apparent." *See Flor*, 259 A.3d at 910; PCRA Ct. Op., 11/15/21, at 4. We defer to this credibility finding.

---

[13] Our Crimes Code defines perjury as making "**in any official proceeding** . . . a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true." 18 Pa.C.S. § 4902(a) (emphasis added). At the PCRA hearing, however, both Appellant's counsel and Nephew confirmed Nephew had "never testified" about this matter. N.T., 7/16/21, at 9, 28.

To the extent Appellant avers Nephew made knowingly false statements to police, we note instead the Crimes Code definition of false reports to law enforcement authorities: "knowingly giv[ing] false information to any law enforcement officer with intent to implicate another[.]" *See* 18 Pa.C.S. § 4906(a).

## VIII.  Conclusion

For the foregoing reasons, we conclude the PCRA court did not abuse its discretion in denying Appellant's PCRA petition on the merits.  Accordingly, we affirm the underlying order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/03/2023